## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____
                                            )
FRONTIER AIRLINES, INC.,                    )
                                            )
        Petitioner,                 )
                                            )
v.                                          )    Docket No. 25-1002
                                            )
UNITED STATES DEPARTMENT                    )
OF TRANSPORTATION,                          )
                                            )
        Respondent.                 )
_____     )

## PETITION FOR REVIEW

Pursuant to 49 U.S.C. § 46110(a) and (c), 5 U.S.C. § 706, and Rule 15(a) of the Federal Rules of Appellate Procedure, Petitioner Frontier Airlines, Inc. respectfully petitions this Court to review a final order of the United States Department of Transportation (DOT) styled as DOT Order 2024-12-8, as well as all interlocutory orders, decisions, determinations, and conclusions supporting the above final order (Final Order). The Final Order, which issued on December 17, 2024, is attached to this petition as Exhibit A.

*[Signature on Following Page]*

Respectfully submitted:

/s/ Lorene L. Boudreau
Lorene L. Boudreau
D.C. Circuit #55126
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Direct: 215.864.8245
Fax: 215.864.8999
boudreaul@ballardspahr.com

Aaron Schaer
(D.C. Circuit Application
Forthcoming)
BALLARD SPAHR LLP
1420 Fifth Avenue, Suite 4200
Seattle, WA 98101-2375
Direct: 206.223.7103
Fax: 206.223.7107
schaera@ballardspahr.com

Jeffrey M. Odom
(D.C. Circuit Application
Forthcoming)
BALLARD SPAHR LLP
1420 Fifth Avenue, Suite 4200
Seattle, WA 98101-2375
Direct: 206.223.7093
Fax: 206.223.7107
odomj@ballardspahr.com

*Counsel for Petitioner Frontier Airlines, Inc.*

DATED: January 3, 2025

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____
)
FRONTIER AIRLINES, INC.,            )
)
        Petitioner,         )
)
v.                           )     Docket No. _____
)
UNITED STATES DEPARTMENT   )
OF TRANSPORTATION,         )
)
        Respondent.       )
_____)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Circuit Rule 26.1, Petitioner Frontier Airlines, Inc. (Frontier) states that it is a Colorado corporation wholly owned by Frontier Airlines Holdings, Inc., a Delaware corporation. Frontier Airlines Holdings, Inc. is wholly owned by Frontier Group Holdings, Inc., a Delaware publicly-traded corporation. There are four entities that own greater than ten percent of Frontier Group Holdings, Inc.: William A. Franke; Indigo Denver Management Company, LLC; Group Holdings – Frontier LLC; and Wildcat Partner Holdings LP. Frontier is an ultra-low-fare air carrier headquartered in Denver, Colorado that provides passenger service throughout the United States and

to select international destinations in the Americas.

Respectfully submitted:

/s/ Lorene L. Boudreau
Lorene L. Boudreau
D.C. Circuit #55126
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Direct: 215.864.8245
Fax: 215.864.8999
boudreaul@ballardspahr.com

Aaron Schaer
(D.C. Circuit Application
Forthcoming)
BALLARD SPAHR LLP
1420 Fifth Avenue, Suite 4200
Seattle, WA 98101-2375
Direct: 206.223.7103
Fax: 206.223.7107
schaera@ballardspahr.com

Jeffrey M. Odom
(D.C. Circuit Application
Forthcoming)
BALLARD SPAHR LLP
1420 Fifth Avenue, Suite 4200
Seattle, WA 98101-2375
Direct: 206.223.7093
Fax: 206.223.7107
odomj@ballardspahr.com

*Counsel for Petitioner Frontier Airlines, Inc.*

DATED: January 3, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 3, 2025, I caused a true and accurate copy of

the foregoing Petition for Review and Corporate Disclosure Statement to be served

by United States first-class mail, postage prepaid, upon the following:

Secretary Pete Buttigieg
United States of America Department of Transportation
Office of the Secretary
1200 New Jersey Ave, SE
Washington, DC 20590

United States of America Department of Transportation
Office of the General Counsel
1200 New Jersey Ave, SE
Washington, DC 20590

Respectfully submitted:

/s/  Lorene L. Boudreau
Lorene L. Boudreau
D.C. Circuit #55126
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Direct: 215.864.8245
Fax: 215.864.8999
boudreaul@ballardspahr.com

*Counsel for Petitioner Frontier
Airlines, Inc.*

**EXHIBIT A**

Order 2024-12-8
Served: December 17, 2024



**UNITED STATES OF AMERICA**
**DEPARTMENT OF TRANSPORTATION**
**OFFICE OF THE SECRETARY**
**WASHINGTON, D.C.**

Issued by the Department of Transportation
On the 17th day of December, 2024

<table>
<tr><td>

**Applications of:**

**ALASKA AIRLINES, INC.;**
**AMERICAN AIRLINES, INC.;**
**DELTA AIR LINES, INC.;**
**FRONTIER AIRLINES, INC.;**
**JETBLUE AIRWAYS CORPORATION;**
**SPIRIT AIRLINES, INC.;**
**SOUTHWEST AIRLINES CO.; and**
**UNITED AIRLINES, INC.**

For exemptions from 14 C.F.R. Part 93, Subparts K and S, pursuant to 49 U.S.C. § 41718(i), Special rules for Ronald Reagan Washington National Airport (Additional Slot Exemptions), as added by Section 502 of the Federal Aviation Administration Modernization and Reauthorization Act of 2024

</td><td>

**Docket DOT-OST-2024-0065**

</td></tr>
</table>

**FINAL ORDER**

## I.  SUMMARY

By this Order, the U.S. Department of Transportation (the Department) makes final its tentative findings and conclusions set forth in Order 2024-10-11 and awards two slot exemptions at Ronald Reagan Washington National Airport (DCA) to each of the five air carriers listed below, to operate new nonstop roundtrip service as follows:

- Alaska Airlines, Inc. (Alaska) for service to San Diego, California (SAN);

- American Airlines, Inc. (American) for service to San Antonio, Texas (SAT);

- Delta Air Lines, Inc. (Delta) for service to Seattle, Washington (SEA);

- Southwest Airlines Co. (Southwest) for service to Las Vegas, Nevada (LAS); and

- United Airlines, Inc. (United) for service to San Francisco, California (SFO).

## II.    BACKGROUND

Section 502 of the Federal Aviation Administration Reauthorization Act of 2024 (FAA 2024), signed into law on May 16, 2024, amends Section 41718 of Title 49 of the U.S. Code by directing the Department to grant 10 exemptions to air carriers to operate limited frequencies and aircraft on routes between Ronald Reagan Washington National Airport and domestic airports within or beyond the airport's 1,250-mile perimeter.[1] Accordingly, by Notice on June 24, 2024, the Department sought applications for the 10 exemptions. By Order 2024-10-11, issued on October 16, 2024, the Department directed all interested persons to show cause why we should not make final our tentative findings and conclusions stated therein and award two slot exemptions at DCA to each of five air carriers to operate new nonstop roundtrip service. We gave interested persons 14 calendar days to file objections or comments to Order 2024-10-11 and 7 business days thereafter to file answers to any objections or comments.

## III.    SUPPORTING COMMENTS

The Department received comments in support of its tentative findings and conclusions from Alaska, American, Delta, Southwest, and United.[2,3] These parties support the Department's assessment of the statute, and the Department's determination of the competitive benefits associated with our tentative allocation of the 10 additional slot exemptions at DCA.

### Comments of Alaska

In its comments to the Department, Alaska supports the Department's tentative determination that Alaska is *eligible* in this proceeding as a limited incumbent. Additionally, Alaska supports the Department's tentative determination that Frontier and Spirit are *ineligible* to apply for slot exemptions in this proceeding. Alaska also states that its codeshare relationship with American is strictly limited by its formal settlement agreement related to the acquisition of Virgin America. Alaska alleges that the nature of its relationship with American does not make it an "affiliated

---

[1] FAA Reauthorization Act of 2024, Pub L. No. 118-63 (May 16, 2024) ("FAA 2024").

[2] DOT-OST-2024-0065-23590, Comments of Alaska Airlines, Inc. on Show Cause Order 2024-10-11; DOT-OST-2024-0065-23585, Comments of American Airlines, Inc.; DOT-OST-2024-0065-23584, Comments of Delta Air Lines, Inc.; DOT-OST-2024-0065-23593, Comments of Southwest Airlines Co. to Order to Show Cause; DOT-OST-2024-0065-23588, Comments of United Airlines, Inc.

[3] The San Diego Congressional Delegation and California Senate Delegation also filed letters in support of the Department's tentative findings and conclusions.

carrier" of American at DCA, and that Alaska cannot, and will not, place American's code on
Alaska-operated DCA-SAN flights.

## IV.  OBJECTIONS

Objections to Order 2024-10-11 were filed by JetBlue Airways Corporation (JetBlue), Frontier
Airlines, Inc. (Frontier), Spirit Airlines, Inc. (Spirit), and the San Jose Mineta International
Airport (SJC Airport).[4]

### Objection of JetBlue[5]

In objection to Order 2024-10-11, JetBlue argues that the Department's decision in this
proceeding contrasts with stated policy goals with respect to competition in the airline industry.
JetBlue objects to the Department's selections, stating that the Department rejects the "three
smallest applicants who deliver lower-fare competition."[6] JetBlue alleges that the Department, in
making final its tentative findings and conclusions, would "further erode competition" with an
award of slot exemptions to "high-fare legacy carriers." JetBlue states that the Department's
decision in this proceeding, and in other actions, has strengthened the position of dominant
carriers and challenged the growth of smaller carriers. Further, JetBlue reiterates its own
comments made on the public record for this proceeding regarding the alleged noncompliance of
United's application for slot exemptions, and United's history of strong public opposition to
additional slot exemptions at DCA.

Finally, JetBlue objects to the Department's analysis of air fares in the Washington-San Juan
market. JetBlue states that the assessment of air fares is not adjusted for the stage-length of
proposed routes, and therefore does not provide an accurate comparison for beyond-perimeter
routes at DCA.

### Objection of Frontier[7]

Frontier objects to the Department's tentative determination that the carrier is ineligible to apply
for slot exemptions in this proceeding as a limited incumbent air carrier. Frontier alleges that
because the statutory definition of new entrant does not distinguish between slots and slot
exemptions, Frontier cannot be classified as such due to its status as a carrier operating with slot
exemptions at DCA at the time of the enactment of FAA 2024. Further, Frontier states that the
Department, in previous proceedings, has treated it as a limited incumbent air carrier.[8] Finally,
Frontier reiterates that because § 41714(h)(5)(B) does not specify a lower limit for slot holdings
to be counted when considering the classification of DCA air carriers, Frontier – which holds

---

[4] Additional comments in opposition were filed by Exhaustless, Inc. *See* DOT-OST-2024-0065-23583, as discussed
below.
[5] DOT-OST-2024-0065-23589, Objection of JetBlue Airways Corporation.
[6] *Id.*
[7] DOT-OST-2024-0065-23586, Frontier Airlines, Inc. (Objection to Order to Show Cause).
[8] *Id.*

-4-

zero (0) slots at DCA when slot exemptions are excluded – remains eligible as a limited incumbent.

Frontier also objects to the Department's tentative determination of Alaska's eligibility as a limited incumbent air carrier in this proceeding. Frontier alleges that this approach is contrary to a plain reading of the statute, that the tentative determination is not supported by the legislative history or congressional intent of 49 U.S.C. § 41714(k), and that Alaska's codeshare relationship with American provides the carrier with meaningful access at DCA.

**Objection of Spirit**[9]

Spirit objects to the Department's tentative determination that the carrier is ineligible to apply for slot exemptions in this proceeding in the limited incumbent air carrier category. Specifically, Spirit objects to the tentative conclusion that carriers eligible to obtain slot exemptions in this proceeding must have been incumbents providing air transportation at DCA on the date of the enactment of FAA 2024. Spirit alleges that the word "incumbent" is not defined in any relevant statute or regulation, and that the text of FAA 2024 does not depart from past slot exemption provisions. Additionally, Spirit states that prior versions of the statute – prior to the amendment made by Congress in enacting FAA 2024 – utilize the term "operates," not "incumbent," when referring to air carriers providing service at an airport. Therefore, Spirit argues that FAA 2024 does not require a carrier to be operating on the date of enactment to qualify as a limited incumbent in this proceeding. Spirit asks that the Department amend its tentative determination and recognize the carrier as an eligible limited incumbent in this proceeding.

Spirit also objects to the Department's tentative determination of Alaska's classification as a limited incumbent air carrier in this proceeding. Spirit alleges that the Department misclassified Alaska, contrary to § 41714(k). According to Spirit, Alaska's codeshare relationship with American disqualifies Alaska from consideration as a limited incumbent. Spirit notes that FAA 2024 does not amend the statutory definition of limited incumbent or affiliated air carriers. Finally, Spirit objects to the Department's assessment of the legislative history for § 41714(k). Spirit asks that the Department amend its tentative determination and re-categorize Alaska as a non-limited incumbent in this proceeding.

**Objection of San Jose Mineta International Airport**[10]

SJC Airport objects to the Department's tentative determination that Spirit is ineligible to apply for slot exemptions in this proceeding. SJC Airport states that Spirit's application to serve its airport is consistent with the statutory criteria provided by FAA 2024 and would enable new, competitive service between Washington, D.C. and the South Bay region.

---

[9] DOT-OST-2024-0065-23587, Objection of Spirit Airlines to Order to Show Cause.
[10] DOT-OST-2024-0065-23591, San Jose Mineta International Airport (Objection to Show Cause Order 2042-10-11).

-5-

**Objection of Exhaustless Inc.**[11]

Exhaustless Inc. (Exhaustless) opposes the Department's tentative findings and conclusions in Order 2024-10-11. Exhaustless states that, in awarding additional slot exemptions at DCA, the Department "has tentatively decided to purloin all supplier and consumer airspace reservations serving D.C. Airport – and those serving every other airport in the United States – from Exhaustless' multi-sided market-clearing service," and "unlawfully 'grant' to certain carriers a title of heredity for those reservations to use the public's airspace."[12]

## V.    RESPONSES TO OBJECTIONS

**Answer of Alaska**[13]

In its answer of November 8, Alaska opposes the objections of Spirit and Frontier, which allege that Alaska's codeshare agreement with American disqualifies it from being classified as a limited incumbent. Alaska argues that the context and legislative history of the relevant statute are valid, of relevance, and support the Department's tentative determination. Alaska, in support of its argument, provides additional legislative history for the relevant statute.[14]

Additionally, Alaska restates its argument that Spirit and Frontier are not eligible to apply for slot exemptions in this proceeding. Alaska disputes Spirit's contention that certain, more specific wording in the statute would need to specify that eligible carriers had to be providing air transportation at DCA as of the date of enactment of FAA 2024. Alaska also restates its support for the Department's tentative determinations regarding air carrier eligibility. Alaska again states that Spirit is not eligible as a limited incumbent in this proceeding because it does not meet a plain-meaning definition of "incumbent." Regarding Frontier, Alaska states that the statutory language is unambiguous in that it classifies Frontier as a new entrant, and thus as ineligible to receive slot exemptions under the criteria established by FAA 2024.

**Reply of Spirit**[15]

Spirit filed a consolidated reply in response to Alaska and Frontier. Spirit disputes the comments of Alaska, which supports its eligibility in the limited incumbent category. Spirit alleges that the settlement agreement related to Alaska's acquisition of Virgin America does not supersede the relevant statute, § 41714(k), and thus does not make Alaska eligible in that category. Spirit reiterates that Alaska does gain meaningful access to DCA via its relationship with American, and that § 41714(k) does not specify the type of code-sharing relationship that is, or is not, applicable under that section. Finally, Spirit reiterates its opposition to Alaska's and the Department's interpretation of the legislative history, and the inclusion of such history in the record for this proceeding.

---

[11] DOT-OST-2024-0065-23583, Exhaustless Inc. (Opposition to Show Cause Order 2024-10-11).
[12] *Id.* at 2.
[13] DOT-OST-2024-0065-23596, Answer of Alaska Airlines, Inc.
[14] *Id.* at 8.
[15] DOT-OST-2024-0065-23594, Consolidated Reply of Spirit Airlines, Inc.

Spirit also reiterates its argument that Frontier is not eligible as a limited incumbent in this proceeding. Spirit disputes Frontier's interpretation of the relevant statute and statutory criteria for FAA 2024.

Finally, Spirit alleges that the Department's tentative award of two slot exemptions to United for service between DCA-SFO violates the statutory criteria provided by FAA 2024. Spirit argues that an award to United does not meet the relevant statutory criteria because the service would not be between DCA and an unserved airport, and because the service does not have a positive impact on the overall level of competition in the Washington-San Francisco market.

**Motion for Leave to File and Supplement Objection of Frontier**[16]

On November 26, 2024, Frontier filed a Motion for Leave to File and Supplement Objection. Therein, Frontier stated that its initial submission in this proceeding did not include information with respect to the starting date or aircraft type for the service proposed. Frontier acknowledges that such information is not relevant to the Department's determination regarding its eligibility in this proceeding but seeks leave to submit the additional information as required by 14 CFR § 302.6. Frontier states that good cause exists for granting it leave to file the relevant information. Frontier therefore informs the Department that it would operate the proposed DCA to San Juan Puerto Rico (SJU) service with Airbus A320 family aircraft with between 180 and 240-seats, and that the proposed service would arrive daily at DCA at 1630 EST, departing to SJU at 1730 EST. Frontier provides a desired starting date of March 6, 2025, for the proposed service.

## VI.   DECISION

The Department finalizes its tentative findings and conclusions set forth in Order 2024-10-11, and awards two slot exemptions from the application of 49 U.S.C. §§ 49104(a)(5), 49109, 41714, and 14 C.F.R. Part 93, Subparts K, S, and T pursuant to 49 U.S.C. § 41718(i), to each of five non-limited or limited incumbent air carriers – Alaska, American, Delta, Southwest, and United – to operate new nonstop roundtrip service at DCA. Comments of the objecting parties have been carefully considered, and do not provide a basis for the Department to change the tentative conclusions reached by the Department in this proceeding.

## Discussion

The Department has decided to finalize the tentative findings, conclusions, and selections in the show-cause order. In reaching this decision, the Department again notes that the statutory criteria provided by FAA 2024 limit our discretion when awarding the new slot exemptions, leaving little room to address a full range of competition issues in a manner consistent with past practice. The statute does so first by requiring air carriers, in addition to qualifying as either limited or non-limited incumbents, to also be incumbents at DCA (*i.e.*, providing air transportation) on the date of enactment of FAA 2024 to be eligible. Second, the amended statute, unlike its prior versions,

---

[16] DOT-OST-2024-0065-23600, Motion for Leave to File and Supplement Objection of Frontier Airlines, Inc. to Order to Show Cause (Corrected).

excludes new entrants from participating in this proceeding. Though both choices by Congress narrow the Department's ability to classify and consider all carriers and business models for the available slot exemptions, the Department has applied the statutory criteria to the applications while maximizing the competitive and public benefits contemplated by FAA 2024.

With respect to the objection of JetBlue, the Department is not persuaded to amend its decision and select JetBlue's proposal for a second-daily service in the DCA-SJU market or for daily service between DCA and Los Angeles, California (LAX). The Department considers and rejects JetBlue's comments with respect to its competitive position at DCA relative to the awardees and other applicants in this proceeding. In affirming our tentative findings, we note that FAA 2024 directs the Department to expressly consider the impact of proposed service on competition in the markets that will be served to/from DCA. While JetBlue may be a smaller competitor at DCA, its status as the sole-operator of DCA-SJU service, and commanding share of local origin/destination customers on this route outweigh, in this case, the competitive merits of a slot exemption award. As noted in Order 2024-10-11, our analysis of widely available market data finds that JetBlue carried approximately 80 percent of customers traveling between DCA-SJU for the year-ending first quarter of 2024.[17] JetBlue, therefore, competes only minimally with other DCA carriers for customers in this market, despite its smaller overall scale. With an additional DCA-SJU frequency, JetBlue's incentive to compete with other carriers in this market may be reduced further. The Department also considers and rejects JetBlue's comments with respect to our analysis of air fares. The Department balanced a variety of competitive factors while adhering to the statutory criteria in this proceeding- of which air fare was one. Adjusting our analysis post-hoc, to account for the stage-length of routes proposed, would not make a material difference or lead to different tentative findings and conclusions. In consideration of the above factors and statutory criteria, the Department affirms its tentative conclusion that an award to JetBlue for DCA-SJU service would not enhance air travel options in an unserved beyond-perimeter market, nor do the benefits of the proposed service outweigh those of other applicants selected in this proceeding.

Regarding the objections of Spirit and Frontier, and based upon the statutory text provided by Congress, the Department is not persuaded by the arguments the carriers make regarding their eligibility in this proceeding. In its objection, Frontier does not provide arguments that the Department did not already consider in issuing Order 2024-10-11. Our determination is therefore unchanged, and the Department finds that under the applicable statutes and regulations, Frontier is a new entrant carrier at DCA and does not qualify as a limited incumbent carrier in this proceeding.[18]

The arguments made by Spirit and SJC Airport do not provide a further persuasive basis to change our approach vis-à-vis Spirit's eligibility in this proceeding. Spirit's argument, that

---

[17] Bureau of Transportation Statistics Airline Origin and Destination Survey (DB1B).
[18] The Department grants Frontier's Motion for Leave to File of November 26, 2024. However, the supplemental filing does not present new arguments, or information persuasive to the Department with respect to the carrier's eligibility in this proceeding.

-8-

section 502 of FAA 2024 does not use certain wording such as the term "operates," is not supported by a plain reading of the statute as it existed at the time the Department was required to apply it in this proceeding. Further, Spirit's argument is not supported by the preceding amendment to the statute that added slot exemptions at DCA.[19] The preceding amendment to the statute that added slot exemptions required the Secretary to "make 8 available to limited incumbent air carriers or new entrant air carriers."[20] In this matter, the relevant statute contains additional qualifying language requiring the Secretary to "make 2 [slot exemptions] available to incumbent air carriers qualifying for status as a limited incumbent carrier."[21] Therefore, as stated in Order 2024-10-11, the Department determines that the amended statute presents a clear two-part test for determining carrier qualification in this proceeding. Spirit did not provide air transportation at DCA on the date of the enactment of FAA 2024. Therefore, the Department cannot reasonably determine that Spirit is an "incumbent carrier qualifying as a limited incumbent." The relevant question is not whether Spirit could be a limited incumbent under the terms of § 41714(h)(5), but whether Spirit was an incumbent at DCA on May 16, 2024. Spirit was not.

The Department also considered all arguments with respect to Alaska's eligibility. The Department notes that the only two parties to question Alaska's eligibility—Spirit and Frontier—are not themselves eligible, and therefore are not directly injured or affected by our determination that Alaska is eligible as a limited incumbent. The Department's tentative determination in the show cause order, finalized herein, that Alaska is a limited incumbent for the purposes of this proceeding, is based upon the best reading of the applicable statutes. The Department reads §41714(k), which is a generally applicable statute, in the context of the specific language in FAA 2024, which clearly requires the Department to grant slot exemptions for two different categories of carriers operating at the airport, using a set of specific and narrow qualifying criteria without reference to codeshare agreements. Section 41714(k) is properly interpreted to exclude regional affiliates from obtaining slot exemptions that would likely be controlled by the larger mainline incumbents.[22]

Alaska has demonstrably fewer slots and slot exemptions at DCA in comparison to larger incumbents. And like other carriers operating at DCA, Alaska has codeshare arrangements that the carrier uses to expand the breadth of destinations it offers to customers traveling to/from points in its network. As stated in Order 2024-10-11, the code-sharing relationship between Alaska and American at DCA does not include slot-sharing provisions, does not increase the slot holdings of the dominant carrier at DCA (i.e., American), and does not place Alaska-operated

---

[19] 49 U.S.C. § 41718(g).
[20] 49 U.S.C. § 41718(g)(2).
[21] 49 U.S.C. § 41718(i)(3).
[22] For example, larger mainline carriers may enter into agreements (such as a fee per-departure arrangement) with regional affiliates that operate services under the mainline carrier's marketing control. In such arrangements, the non-marketing carrier may hold and operate slots at an airport but does not compete directly with the mainline/marketing carrier. This is not the case for Alaska and American at DCA, where both carriers operate independently under their own marketing control.

slots under the marketing control of American (i.e., American cannot place its code on any Alaska flight originating or terminating at DCA).

Reading the statute as a whole, the best interpretation is that Alaska is a limited incumbent carrier. Reading § 41714(k) rigidly as Spirit and Frontier urge us to do, detracts from the broader text and purpose of the statute, which provides slot exemptions to address competition and access issues at DCA. Moving Alaska into the non-limited incumbent category would result in a suboptimal outcome, reducing the maximum public benefits available from these scarce assets. As Spirit and Frontier are ineligible (and no other eligible applications were received in the limited incumbent category), placing Alaska in the non-limited incumbent category would necessarily result in one of the five slot pairs going unallocated, and therefore not fulfill the directive of Congress to allocate the five slot pairs. We are therefore not persuaded to amend our tentative determination.

Finally, with respect to the objection of Exhaustless, the Department finds the arguments stated therein to be outside of the scope of this proceeding and not directly relevant to the statutory requirements imposed by Congress.

With consideration for the above, the Department finalizes its tentative findings and conclusions set forth in Order 2024-10-11.

## VII.    CONDITIONS

**Start-up**
Carriers are expected to inaugurate full service within 90 days following the date of service of this Order, unless otherwise requested, and approved, in writing by the Department in docket DOT-OST-2024-0065. If, for any reason, an awardee is not able to use the slot exemptions awarded, the carrier shall notify the Department not later than ten (10) days after the date of service of this Order.

**Assignment of Slot Times**
In coordination with the Federal Aviation Administration (FAA) Slot Administration Office, the Department will assign slot times corresponding with the authority granted in this proceeding, and in accordance with the requirements of FAA 2024.[23] The Department directs Alaska, American, Delta, Southwest, and United to work with the FAA Slot Administration Office to identify slot times for these new operations. Carriers are asked for flexibility and cooperation with the statutory cap for slot exemption assignments. Carriers may be required to justify the viability of proposed service during available slot exemption hours. Final slot times will be assigned in a notice subsequent to our decision.

---

[23] As stated in the Department's June 24, 2024 Notice, and in Order 10-11-2024, 49 U.S.C. § 41718(C)(2)(ii) allows the Department to assign two additional slot exemptions per one hour period (for a total of five). There are 15 hourly periods between 7:00 a.m. EST and 9:59 p.m. EST, and all slot exemptions must fit into the combined 75 slot times during these periods. Applicants were advised of these constraints, including that multiple periods have already reached the statutory cap for slot exemption assignments.

-10-

**Environmental Issues**

49 U.S.C. § 41718(e) specifically exempts our action here from review under the National Environmental Policy Act. Additionally, under 49 U.S.C. § 47117(e), the Department will continue to give DCA priority in making grants for airport noise compatibility planning and programs.[24]

**Administrative Terms**

49 U.S.C. § 417149(j) prohibits awardees from selling, trading, transferring, or conveying the operating authorities granted by the subject exemptions, except through an air carrier merger or acquisition. Additionally, the Department prohibits carriers from using the operating authorities granted by the subject exemptions to conduct air transportation to points other than those approved by this Order.

This Order is issued under authority redelegated by the Under Secretary of Transportation in 49 CFR § 1.25a(b)(6)(ii)(D) to the Assistant Secretary for Aviation and International Affairs.

**ACCORDINGLY,**

1.  We make final our findings and conclusions as stated in Order 2024-10-11 and grant additional slot exemptions pursuant to 49 U.S.C. § 41718(i) to Alaska Airlines, Inc. (two slot exemptions to serve San Diego International Airport); American Airlines, Inc. (two slot exemptions to serve San Antonio International Airport); Delta Air Lines, Inc. (two slot exemptions to serve Seattle-Tacoma International Airport); Southwest Airlines Co. (two slot exemptions to serve Las Vegas Harry Reid International Airport); and United Airlines, Inc. (two slot exemptions to serve San Francisco International Airport);

2.  The Department directs Alaska Airlines, Inc., American Airlines, Inc., Delta Air Lines, Inc., Southwest Airlines Co., and United Airlines, Inc. to file in Docket DOT-OST-2024-0065 no later than ten (10) business days after the service date of this Order their proposed flight schedules and effective date for operations authorized by this Order. Further, the awardees must commence their service by no later than March 17, 2025, unless otherwise requested and approved in writing by the Department;

3.  The Department directs the awardees to contact the FAA Slot Administration Office regarding their proposed schedules associated with the slot exemptions. FAA will assign slot exemption numbers, effective dates, and operating times consistent with statutory limitations. The Department will coordinate with the FAA Slot Administration Office to make a final assignment of operating times for these slot exemptions in a separate notice, as soon as possible;

---

[24] The Department expects all operations conducted with the additional slot exemptions to utilize single-aisle aircraft meeting, at minimum, FAA Stage 3 noise standards as required by 49 U.S.C. § 41718(c).

4. The slot exemptions granted under 49 U.S.C. § 41718(i) may not be used for operations between the hours of 10:00 p.m. and 7:00 a.m., and the exemptions granted under 49 U.S.C. § 41718 (a), (b), (g), and (i) may not increase the number of operations at Ronald Reagan Washington National Airport in any one-hour period during the hours of 7:00 a.m. and 9:59 p.m. by more than five operations;

5. Except as otherwise granted, we deny all other applications for slot exemptions filed in this docket;

6. The Department prohibits Alaska Airlines, Inc., American Airlines, Inc., Delta Air Lines, Inc., Southwest Airlines Co., and United Airlines, Inc. from selling, trading, transferring, or conveying the operating authorities granted by the subject exemptions, except through an air carrier merger or acquisition;

7. The Department prohibits Alaska Airlines, Inc., American Airlines, Inc., Delta Air Lines, Inc., Southwest Airlines Co., and United Airlines, Inc. from using the operating authorities granted by the subject exemptions to conduct air transportation to points other than those approved by this Order;

8. The authorities granted under these exemptions are subject to all of the other requirements delineated in 14 C.F.R. Part 93, Subparts K and S, including, but not limited to, the reporting provisions and use-or-lose requirements set forth in 14 C.F.R. § 93.227;

9. The Department denies the motion of JetBlue Airways Corporation to disqualify United from consideration for an award of DCA beyond-perimeter exemption slots, filed on July 10, 2024;

10. The Department grants the motion seeking leave to file otherwise unauthorized documents submitted by Frontier Airlines, Inc. in the docket;

11. This docket will remain open until further order of the Department; and

-12-

12. We will serve this Order on all parties on the service list in this docket.


By:



**CAROL A. (ANNIE) PETSONK**
Assistant Secretary for Aviation
and International Affairs

(SEAL)


An electronic version of this document will be available online at:
https://www.regulations.gov