**[ORAL ARGUMENT NOT SCHEDULED]**

**No. 25-1002**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

FRONTIER AIRLINES, INC.,

Petitioner,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION,

Respondent,

ALASKA AIRLINES, INC.

Intervenor.

———————————

On Petition for Review of a Final Order
of the United States Department of Transportation

———————————

## RESPONSE IN OPPOSITION TO PETITIONER'S MOTION FOR
## A PARTIAL STAY

———————————

BRETT A. SHUMATE
  *Acting Assistant Attorney
    General*

MICHAEL S. RAAB
SIMON C. BREWER
  *Attorneys, Appellate Staff
  Civil Division, Room 7529
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 616-5367*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.      Parties and Amici

Petitioner is Frontier Airlines, Inc.  Respondent is the United States Department of Transportation.  On January 27, 2025, the Court granted the motion of Alaska Airlines, Inc. to intervene in support of respondent.  To date, no amici have appeared in this Court.

### B.      Rulings Under Review

The order under review is Department of Transportation Order 2024-12-8 (Dec. 17, 2024).  The docket number is DOT-OST-2024-0065.

### C.      Related Cases

This case has not previously been before this Court or any other court.  Counsel is not aware of any other related cases currently pending in this Court or any other court within the meaning of D.C. Circuit Rule 28(a)(1)(C).

*/s/ Simon C. Brewer*
Simon C. Brewer

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................iv

GLOSSARY ........................................................................viii

INTRODUCTION ...................................................................... 1

STATEMENT .......................................................................... 2

ARGUMENT ........................................................................... 7

I.      Frontier's stay motion is procedurally improper ............................. 8

II.     Frontier is unlikely to prevail on the merits. ................................ 10

        A.      Frontier is not a "limited incumbent air carrier" within
                the meaning of the statute. ...................................... 10

        B.      The agency properly treated Alaska as a limited
                incumbent air carrier. ........................................... 15

III.    The other equitable factors weigh against a stay pending
        appeal. ......................................................................... 17

        A.      Frontier fails to demonstrate irreparable harm. ................. 17

        B.      The public interest weighs against a stay. ........................ 21

        C.      If the Court grants a stay, it should stay the Final
                Order in full. ..................................................... 22

IV.     The government does not object to an expedited briefing
        schedule ........................................................................ 23

CONCLUSION ........................................................................ 24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Alpine Sec. Corp. v. Financial Indus. Regulatory Auth.*,
   121 F.4th 1314 (D.C. Cir. 2024)............................................................. 19

*Boston Parent Coal. for Acad. Excellence Corp. v. School Comm.*,
   996 F.3d 37 (1st Cir. 2021).................................................................... 9

*Central & S. Motor Freight Tariff Ass'n v. United States*,
   757 F.2d 301 (D.C. Cir. 1985) ............................................................... 18

*Environmental Def. Fund, Inc. v. EPA*,
   716 F.2d 915 (D.C. Cir. 1983) ................................................................ 8

*Exhaustless Inc. v. FAA*,
   931 F.3d 1209 (D.C. Cir. 2019) ............................................................. 2

*Fontem US, LLC v. U.S. FDA*,
   2022 WL 2761393 (D.C. Cir. July 12, 2022) ......................................... 9

*Fund for Animals v. Frizzell*,
   530 F.2d 982 (D.C. Cir. 1975) ............................................................... 21

*Gordon v. Holder*,
   632 F.3d 722 (D.C. Cir. 2011) ............................................................... 20

*Gorman v. National Transp. Safety Bd.*,
   558 F.3d 580 (D.C. Cir. 2009) ......................................................... 13, 14

*KalshiEX LLC v. Commodity Futures Trading Comm'n*,
   119 F.4th 58 (D.C. Cir. 2024)......................................................... 17, 20

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024).......................................................................... 16, 17

*Nken v. Holder*,
    556 U.S. 418 (2009)..................................................8, 10, 18, 21

*NTE Conn., LLC, In re*,
    26 F.4th 980 (D.C. Cir. 2022) ..........................................19, 20

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
    559 F.2d 841 (D.C. Cir. 1977) ...........................................9, 18

*Wisconsin Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985) ...............................................20

**Statutes:**

FAA Modernization and Reform Act of 2012,
    Pub. L. No. 112-95, tit. IV, subtitle A, § 414(c), 126 Stat. 11, 92 .........3

FAA Reauthorization Act of 2024,
    Pub. L. No. 118-63, tit. V, subtitle A, § 502, 138 Stat. 1025, 1187........4

49 U.S.C. § 41714(h)(3)...............................................3, 5, 10, 14

49 U.S.C. § 41714(h)(5)..........................................................3, 14

49 U.S.C. § 41714(h)(5)(A)............................................................12

49 U.S.C. § 41714(h)(5)(B)
    (effective Apr. 5, 2000 to Feb. 13, 2012)....................................3, 11, 15

49 U.S.C. § 41714(h)(5)(B).............................................................5

49 U.S.C. § 41714(h)(5)(B)(i) ..................................................3, 12

49 U.S.C. § 41714(k) ...............................................................4, 6, 16

49 U.S.C. § 41714 note (2012 amendment).........................................11-12

49 U.S.C. § 41718...........................................................................2

49 U.S.C. § 41718(a) ............................................................ 2

49 U.S.C. § 41718(g) ............................................................ 2

49 U.S.C. § 41718(i) ........................................................ 2, 4

49 U.S.C. § 41718(i)(1) ............................................ 4, 11, 21

49 U.S.C. § 41718(i)(2) ........................................................ 4

49 U.S.C. § 41718(i)(3) .................................................. 4, 10

49 U.S.C. § 41718(i)(4)(B) .................................................. 21

49 U.S.C. § 46110(d) ............................................................ 8

**Regulations:**

14 C.F.R. pt. 93, subpart K ............................................... 2

14 C.F.R. pt. 93, subpart S ............................................... 2

14 C.F.R. § 93.123 ............................................................. 2

14 C.F.R. § 93.213(a)(5) ............................................ 3, 12, 13

**Rules:**

Fed. R. App. P. 8 .............................................................. 9

Fed. R. App. P. 18 ............................................................ 7

Fed. R. App. P. 18(a)(1) ..................................................... 8

Fed. R. App. P. 18(a)(2)(A)(i) .............................................. 8

**Other Authority:**

U.S. Sentencing Guidelines Manual
  (U.S. Sentencing Comm'n 2024) ........................................................ 13

## GLOSSARY

DOT                        Department of Transportation

FAA                        Federal Aviation Administration

**INTRODUCTION**

In 2024, Congress directed the Department of Transportation (DOT) to authorize a limited number of additional flights at Ronald Reagan Washington National Airport (National Airport). By statute, only certain categories of airlines were eligible for these new allocations. DOT therefore carefully determined the eligibility of airlines that applied for the new flight authorizations. Petitioner Frontier Airlines did not qualify, so DOT denied its application. The authorizations Frontier sought were instead awarded to intervenor Alaska Airlines for a new route beginning on March 17, 2025.

After waiting a month from DOT's service of the order, Frontier now seeks a stay in this Court. Frontier cannot obtain that relief for multiple, independent reasons. It failed to first seek a stay from the agency. It cannot show a likelihood that DOT erred in denying its application in accordance with the eligibility criteria imposed by Congress. It fails to show that irreparable harm will result if the order takes effect pending this Court's merits review. And the public interest strongly favors allowing Alaska's new flights to begin as scheduled,

avoiding needless disruption to consumers' flight plans that are merely

weeks away.  The stay motion should be denied.

## STATEMENT

1.    At some airports, demand for runway operations exceeds

available capacity.  As a result, the Federal Aviation Administration

(FAA) has long "restricted the number of takeoffs and landings at

certain highly congested airports in order to reduce inefficient flight

delays.  The restrictions were codified in a series of regulations known

as the High Density Rule." *Exhaustless Inc. v. FAA*, 931 F.3d 1209,

1210 (D.C. Cir. 2019); *see* 14 C.F.R. pt. 93, subparts K, S.  The FAA

regulations allocated to airlines a limited number of "slots," which are

authorizations to conduct takeoffs and landings.  *See* 14 C.F.R. § 93.123.

Since 2000, Congress has authorized a series of "slot exemptions"

for National Airport.  *See* 49 U.S.C. § 41718.  Slot exemptions provide

additional takeoff and landing authorizations outside the ordinary slot

allocations.  Congress has instructed DOT to allocate these slot

exemptions to specific categories of airlines.  *See id.* § 41718(a), (g), (i).

As most relevant here, airlines are grouped into three categories by

statute and regulation:

2

**New entrant air carriers:** a "new entrant air carrier" is one that "does not hold a slot at the airport concerned and has never sold or given up a slot at that airport after December 16, 1985." 49 U.S.C. § 41714(h)(3). A "limited incumbent" air carrier, as defined below, also qualifies as a "new entrant air carrier." *Id.*

**Limited incumbent air carriers:** a "limited incumbent air carrier" is one that holds or operates fewer than 40 slots at a particular airport, subject to several exceptions not relevant here. 49 U.S.C. § 41714(h)(5); 14 C.F.R. § 93.213(a)(5). Until 2012, slot exemptions were counted as "slots" for purposes of qualifying as a limited incumbent air carrier. *See* 49 U.S.C. § 41714(h)(5)(B) (effective Apr. 5, 2000 to Feb. 13, 2012). Since 2012, Congress has excluded slot exemptions from the count when determining an airline's status as a limited incumbent. FAA Modernization and Reform Act of 2012, Pub. L. No. 112-95, tit. IV, subtitle A, § 414(c), 126 Stat. 11, 92 (codified at 49 U.S.C. § 41714(h)(5)(B)(i)).

**Non-limited incumbent air carriers:** non-limited incumbent carriers are those that hold or operate too many slots to qualify as a limited incumbent carrier.

3

Airlines sometimes enter into "code-share" arrangements in which one airline places its designator code on a flight operated by another airline and sells tickets for that flight. An airline that "has or enters into a code-share agreement[] with any other air carrier" is ineligible "for a new slot or slot exemption as a new entrant or limited incumbent air carrier . . . if the total number of slots and slot exemptions held by the two carriers at the airport exceed 20 slots and slot exemptions." 49 U.S.C. § 41714(k).

**2.** In 2024, Congress directed DOT to make available 10 additional slot exemptions at National Airport. *See* FAA Reauthorization Act of 2024, Pub. L. No. 118-63, tit. V, subtitle A, § 502, 138 Stat. 1025, 1187 (codified at 49 U.S.C. § 41718(i)). Of those slot exemptions, eight were allocated "to incumbent air carriers qualifying for status as a non-limited incumbent carrier at [National Airport] as of the date of enactment of the FAA Reauthorization Act of 2024." 49 U.S.C. § 41718(i)(2). The other two slot exemptions were allocated to "incumbent air carriers qualifying for status as a limited incumbent carrier." *Id.* § 41718(i)(3). Congress required DOT to grant the slot exemptions within 60 days. *Id.* § 41718(i)(1).

4

**3.**    In October 2024, DOT issued an order to show cause setting forth its tentative conclusions regarding the allocation of the slot exemptions.  Dep't of Transp. Order 2024-10-11 (Oct. 16, 2024) (Show Cause Order).  As principally relevant here, DOT tentatively concluded that petitioner Frontier Airlines was ineligible to receive the "limited incumbent" slot exemptions for a proposed route to San Juan, Puerto Rico.  *Id.* at 16, 20.  The order explained that Frontier was a "new entrant" air carrier rather than a "limited incumbent."  *Id.* at 20.  Frontier operated at National Airport only through slot exemptions, and slot exemptions do not count when determining whether an airline is a limited incumbent.  *Id.*; *see* 49 U.S.C. § 41714(h)(5)(B) ("the term 'slot' shall not include 'slot exemptions'" (formatting marks omitted)).  Accordingly, the order explained that because Frontier "does not hold a slot at the airport concerned" and has never relinquished a slot, it falls within the statutory definition of a "new entrant."  Show Cause Order 20 (quoting 49 U.S.C. § 41714(h)(3)).

The two slot exemptions for a limited incumbent air carrier were instead tentatively granted to intervenor Alaska Airlines for nonstop service to San Diego, California.  *See* Show Cause Order 1.  DOT

explained that Alaska qualifies as a limited incumbent despite its code-share relationship with American Airlines. *See id.* at 21-22. That relationship is materially "limited by a settlement agreement reached in 2017 to resolve issues related to the merger transaction between Alaska and Virgin America Airlines." *Id.* at 21. The settlement imposes restrictions on how Alaska and American may market each other's flights. *Id.* at 21-22. In addition, "the relationship between Alaska and American does not include any slot sharing provisions." *Id.* at 22. The cumulative effect of those limitations is that "Alaska does not receive any meaningful access to the [National Airport] market via its relationship with American." *Id.* DOT therefore concluded that this kind of relationship does not fall within the restriction imposed by 49 U.S.C. § 41714(k).

4.    On December 17, 2024, DOT served an order finalizing its tentative conclusions. Dep't of Transp. Order 2024-12-8 (Dec. 17, 2024) (Final Order). The Final Order explained that Frontier did not provide any new arguments regarding its eligibility, and therefore concluded that the airline was ineligible for a slot exemption. *Id.* at 7. The Final Order further concluded that Alaska would be granted the slot

exemptions for a limited incumbent air carrier. *Id.* at 8-9. It reiterated that Alaska is an eligible limited incumbent because "the code-sharing relationship between Alaska and American at [National Airport] does not include slot-sharing provisions, does not increase the slot holdings of the dominant carrier at [National Airport] (i.e., American), and does not place Alaska-operated slots under the marketing control of American (i.e., American cannot place its code on any Alaska flight originating or terminating at [National Airport])." *Id.* DOT directed Alaska to begin service on the new route to San Diego no later than March 17, 2025. *Id.* at 10.

**5.** On January 3, 2025, Frontier filed a timely petition for review of the Final Order. Two weeks later, it filed an emergency motion seeking to stay the Final Order with respect to the two slot exemptions granted to Alaska. Frontier did not seek a stay from the agency prior to filing its motion. Mot. 9 n.17.

## ARGUMENT

Frontier's motion should be denied because it failed to first seek a stay from the agency, as required by Federal Rule of Appellate Procedure 18. Moreover, Frontier has failed to satisfy any of the factors

7

governing the issuance of the extraordinary relief sought: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quotation marks omitted).

## I.    Frontier's stay motion is procedurally improper.

The stay motion is procedurally barred because Frontier failed to "move first before the agency for a stay pending review." Fed. R. App. P. 18(a)(1); *see also* 49 U.S.C. § 46110(d) (requiring administrative exhaustion). Because "[t]he filing of an administrative petition for stay is a prerequisite to filing a judicial petition," *Environmental Def. Fund, Inc. v. EPA*, 716 F.2d 915, 921 n.10 (D.C. Cir. 1983), the stay motion can be denied on procedural grounds alone.

In a footnote, Frontier attempts to invoke (Mot. 9 n.17) an exception for cases in which "moving first before the agency would be impracticable." Fed. R. App. P. 18(a)(2)(A)(i). Frontier asserts that seeking a stay from DOT would have been futile because the agency

8

previously rejected "many of the arguments that are in this motion."

Mot. 9 n.17.  The mere fact that the agency previously rejected (some of)

Frontier's arguments is insufficient to show impracticability; were that

the case, the exception would swallow the rule.  As this Court has

observed, "[p]rior recourse to the initial decisionmaker would hardly be

required as a general matter if it could properly grant interim relief

only on a prediction that it has rendered an erroneous decision."

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559

F.2d 841, 844 (D.C. Cir. 1977); *cf. Boston Parent Coal. for Acad.*

*Excellence Corp. v. School Comm.*, 996 F.3d 37, 43 (1st Cir. 2021)

(rejecting a similar argument under Federal Rule of Appellate

Procedure 8).

Moreover, despite styling its stay motion as an "emergency,"

Frontier's "delay also suggests it may have been practicable to seek a

stay from the agency."  *Fontem US, LLC v. U.S. FDA*, 2022 WL

2761393, at *1 (D.C. Cir. July 12, 2022) (per curiam).  Frontier waited a

month to file a stay motion in this Court.  Had Frontier promptly

sought relief from the agency, it might have obviated the need to seek

judicial relief on an "emergency" basis.

9

## II.    Frontier is unlikely to prevail on the merits.

Even if it were procedurally proper, the stay motion should be denied because Frontier is unlikely to succeed on the merits. *See Nken*, 556 U.S. at 434. The Final Order properly implemented the FAA Reauthorization Act of 2024 in granting two slot exemptions to Alaska rather than to Frontier.

### A.    Frontier is not a "limited incumbent air carrier" within the meaning of the statute.

Congress directed DOT to grant two slot exemptions at National Airport to "incumbent air carriers qualifying for status as a limited incumbent carrier at [National Airport] as of the date of enactment of the FAA Reauthorization Act of 2024." 49 U.S.C. § 41718(i)(3). DOT correctly recognized Frontier's ineligibility for those slot exemptions as a new entrant air carrier.

1.    The statutory text makes plain that Frontier is a new entrant air carrier, as DOT concluded. *See* Show Cause Order 20. The category of "new entrant air carrier" includes, in addition to "limited incumbent carriers," any carrier that "does not hold a slot" and "has never sold or given up a slot at [the relevant] airport after December 16, 1985." 49 U.S.C. § 41714(h)(3). Frontier has only operated at National

10

Airport through slot exemptions, so it meets this definition. *See* Show Cause Order 20.

Frontier resists that straightforward conclusion by conflating slot exemptions with slots. *See* Mot. 12-13 (arguing that its slot exemptions should count as slots). A slot exemption is, by statutory definition, not a slot, as shown by the provisions authorizing slot exemptions at National Airport. *See, e.g.*, 49 U.S.C. § 41718(i)(1) (directing DOT to grant "exemptions" from the slot requirement rather than authorizing additional slots). Frontier's slot exemptions are therefore irrelevant to determining its status as a new entrant air carrier at National Airport.

Frontier also notes (Mot. 12-13) that Congress explicitly excluded slot exemptions in the definition of "limited incumbent" but did not include similar language in the "new entrant" definition. That observation does not advance its position. Prior to 2012, the statute made an exception to the general rule that a "slot exemption" is not a "slot" by providing that "the term 'slot' shall include 'slot exemptions.'" *See* 49 U.S.C. § 41714(h)(5)(B) (effective Apr. 5, 2000 to Feb. 13, 2012). In 2012, Congress inserted language specifically excluding slot exemptions to reverse this prior exception. *See* 49 U.S.C. § 41714 note

11

(2012 amendment). It is not sensible to infer from the 2012 amendment that Congress intended to collapse the distinction between slots and slot exemptions more generally.

**2.** DOT also properly determined that Frontier fails to qualify as a limited incumbent. As relevant here, a limited incumbent carrier is an air carrier "that holds or operates fewer than [40] air carrier . . . slots" at National Airport. 14 C.F.R. § 93.213(a)(5).[1] A slot exemption does not count as a slot when determining whether a carrier qualifies as a limited incumbent air carrier. *See* 49 U.S.C. § 41714(h)(5)(B)(i). Applying this definition, the agency determined that Frontier is not a limited incumbent. Frontier operates at National Airport exclusively through slot exemptions, *see* Show Cause Order 20, so it has zero "slots" under the statutory definition of a limited incumbent. As a result, it does not qualify as a limited incumbent.

Frontier nonetheless contends (Mot. 13-14) that having zero slots suffices to qualify for limited incumbent status. In short, Frontier

---

[1] There are various exceptions not relevant here. *See* 14 C.F.R. § 93.213(a)(5). Congress has set the threshold at 40 slots for certain purposes (rather than the 12 slots prescribed in the regulatory definition). *See* 49 U.S.C. § 41714(h)(5)(A).

12

argues that zero slots is "fewer than [40] . . . slots," as required by 14
C.F.R. § 93.213(a)(5).  But DOT rightly understood the cited definition
to require that an air carrier hold and operate at least one slot.  Show
Cause Order 20.  If a prosecutor told a sentencing court that a
defendant was apprehended with "[l]ess than" 1 kilogram of marijuana,
the court likely would be surprised to learn that the defendant
possessed no marijuana at all.  *Cf.* U.S. Sentencing Guidelines Manual
§ 2D1.1(c)(17) (U.S. Sentencing Comm'n 2024).  Similarly, it would be
odd to say that "fewer than" 10 published judicial decisions address a
topic if, in fact, no published decision has addressed the topic.  The
same is true here.  An air carrier with zero slots does not have "fewer
than [40] . . . slots" within the meaning of the pertinent definitions.  14
C.F.R. § 93.213(a)(5).

In other contexts, "less than" or "fewer than" sensibly can be
interpreted to include zero.  That explains this Court's decision in
*Gorman v. National Transportation Safety Board*, 558 F.3d 580 (D.C.
Cir. 2009), on which Frontier relies (Mot. 14).  The Court explained that
a regulation applying to aircraft with "less than 20 seats" was
"ambiguous" as to aircraft with zero seats.  *Gorman*, 558 F.3d at 588

(quotation marks omitted).  Critically, the regulation's context rendered "permissible" the agency's interpretation that the regulation applied to cargo-only aircraft with zero passenger seats.  *See id.* (observing that the regulation's heading "plainly includes an aircraft that carries cargo only").  But Frontier identifies no analogous context here to support its reading.

To the contrary, the regulatory context confirms DOT's interpretation.  In establishing three categories of air carriers, Congress distinguished between those with zero slots (new entrants); those with between 1 and 40 slots (limited incumbents); and those with 40 or more slots (non-limited incumbents).  *See* 49 U.S.C. § 41714(h)(3), (5).  Frontier's interpretation of "limited incumbent" would render that term redundant with "new entrant."[2]

**3.**    Failing to find support in the statutory text, Frontier suggests that DOT impermissibly deviated from three prior decisions

---

[2] As noted above, Congress has decided that a limited incumbent may be treated as a new entrant.  *See* 49 U.S.C. § 41714(h)(3) ("The term 'new entrant air carrier' means . . . a limited incumbent carrier."). But the reverse is not true: a new entrant is not automatically treated as a limited incumbent as well.  It is therefore necessary to preserve the distinction between those categories.

14

classifying it as a limited incumbent.  Mot. 14-15.  That is incorrect.

Two of those decisions predate the 2012 amendment to the statute.  *See*

Mot. Ex. B (order served Nov. 27, 2002); Mot. Ex. C (order served Apr.

1, 2004).  At the time of those orders, slot exemptions qualified a carrier

for limited incumbent status.  *See* 49 U.S.C. § 41714(h)(5)(B) (effective

Apr. 5, 2000 to Feb. 13, 2012).  DOT therefore treated Frontier as a

limited incumbent under the then-operative statutory text.

The third cited decision does not opine on Frontier's status.  In

summarizing Frontier's application, DOT noted that "Frontier confirms

its status as a limited incumbent carrier."  Mot. Ex. D, at 8.  The agency

neither endorsed nor rejected this characterization in rejecting the

application.  *Id.* at 22-23.  There is therefore no unexplained

inconsistency between the Final Order and the prior orders.

### B.   The agency properly treated Alaska as a limited incumbent air carrier.

DOT properly awarded two slot exemptions to Alaska as a limited

incumbent air carrier.  Final Order 8-9.  The agency acknowledged that

the statute generally provides that "an air carrier that . . . has or enters

into a code-share agreement[] with any other air carrier shall not

qualify for a new slot or slot exemption as a . . . limited incumbent air

15

carrier at an airport if the total number of slots and slot exemptions held by the two carriers at the airport exceed[s] 20." Show Cause Order 21 (quoting 49 U.S.C. § 41714(k)). But DOT reasonably determined that this provision does not apply to Alaska because its code-share agreement with American Airlines "is limited by a settlement" that means "Alaska does not receive any meaningful access to the [National Airport] market via its relationship with American." *Id.* at 21-22. The agency supported that conclusion with specific facts, including that the settlement would prohibit Alaska from placing "the American Airlines code on any . . . service operated with a new slot exemption award" and that "the relationship between Alaska and American does not include any slot sharing provisions." *Id.* at 22. In that context, the agency reasonably concluded that Alaska's arrangement was not the kind of code-share contemplated by § 41714(k). Final Order 8-9.

Frontier errs in suggesting that "DOT ignored the statute completely." Mot. 15. Instead, the agency made a reasonable decision of "how a broad statutory term applied to specific facts found by the agency." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 388 (2024). That type of fact-specific determination is well within the agency's ken.

16

*See id.* (citing with approval a decision upholding "an administrative conclusion that a coal-burning railroad that had arrangements with several coal mines was not a coal 'producer' under the Bituminous Coal Act of 1937"). Frontier's quibble regarding one term of the arrangement (Mot. 17) casts no doubt on the agency's overall conclusion that "Alaska does not receive any meaningful access to the [National Airport] market via its relationship with American." Show Cause Order 22; *accord* Final Order 8 & n.22.

## III. The other equitable factors weigh against a stay pending appeal.

### A. Frontier fails to demonstrate irreparable harm.

Frontier fails to demonstrate irreparable harm absent a stay, which is an independently sufficient ground to deny its motion. *See KalshiEX LLC v. Commodity Futures Trading Comm'n*, 119 F.4th 58, 64 (D.C. Cir. 2024) ("[A] showing of irreparable harm is a necessary prerequisite for a stay.").

First, Frontier asserts economic harms from its inability to establish a route between Washington and San Juan. *See* Mot. 18-19. But the requested stay would do nothing to alleviate that injury. A stay would not entitle Frontier to any slot exemptions under the unique

17

rules in place at National Airport; rather, it would merely prevent

Alaska (and potentially other airlines) from using the slot exemptions

pursuant to the Final Order. *See Nken*, 556 U.S. at 428 (explaining

that a stay "temporarily divest[s] an order of enforceability").

Consequently, the slot exemptions would go unused pending resolution

of this petition. That outcome would afford Frontier no efficiency or

operational benefits on the San Juan route. *Cf.* Mot. 18-19.

Second, Frontier asserts a competitive harm from Alaska's new

flight to San Diego, which it states will draw customers from Frontier's

existing service to San Diego. Mot. 19. This Court has long recognized

that such competitive injuries, if they materialize at all, do not entitle a

movant to a stay. *See Central & S. Motor Freight Tariff Ass'n v. United

States*, 757 F.2d 301, 308-09 (D.C. Cir. 1985) (per curiam) ("[The]

petitioners had not demonstrated the irreparable harm required for a

stay, because revenues and customers lost to competition which can be

regained through competition are not irreparable . . . ." (quotation

marks omitted)); *Holiday Tours*, 559 F.2d at 843 n.3 ("The mere

existence of competition is not irreparable harm, in the absence of

substantiation of severe economic impact."). Frontier has not alleged,

for example, that any lost revenues would threaten the existence of its business.  *Cf. Alpine Sec. Corp. v. Financial Indus. Regulatory Auth.*, 121 F.4th 1314, 1329 (D.C. Cir. 2024) ("A business's 'destruction in its current form' commonly qualifies as irreparable harm.").

Against this backdrop, Frontier principally relies (Mot. 17-19) on *In re NTE Connecticut, LLC*, 26 F.4th 980 (D.C. Cir. 2022), but that decision is inapposite.  There, a company challenged an agency order excluding it from an auction.  *See id.* at 990.  On that case's "unusual" facts, the challenger could show irreparable harm from economic loss because "no adequate compensatory or other corrective relief [would] be available at a later date."  *Id.* at 990-91 (quotation marks omitted).  If the challenger prevailed, the auction could not and would not be rerun with the challenger as an additional participant.  *See id.* at 991.  Thus, a stay was necessary to prevent the challenger's exclusion that "would have irreparably and permanently stripped [the company] of very significant future revenues."  *Id.*

The circumstances here are quite different.  If the Final Order is held unlawful, Frontier will be able to participate in a future proceeding in which DOT reallocates the slot exemptions among potentially several

19

applicants.  Any "short-lived" harm arising from Frontier's temporary

inability to use the slot exemptions does not entitle it to the

extraordinary relief sought.  *NTE Conn.*, 26 F.4th at 991.

Moreover, even if Frontier's alleged economic harms were

cognizable, Frontier fails to show that they are both "certain and great."

*Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per

curiam).  Frontier's affiant offers a single sentence asserting that the

company "forecasts an annual revenue loss of approximately $500,000"

because some customers will choose Alaska's flight to San Diego instead

of Frontier's.  Flyr Aff. ¶ 11.  There is no supporting analysis or further

explanation.  Such "an unsubstantiated and speculative theory" fails to

carry Frontier's burden.  *KalshiEX*, 119 F.4th at 66 (quotation marks

omitted).

Finally, Frontier's delay in seeking a stay further undermines its

assertion of irreparable harm.  *Cf. Gordon v. Holder*, 632 F.3d 722, 725

(D.C. Cir. 2011) (discussing cases demonstrating "that untimely filings

may support a conclusion that the plaintiff cannot satisfy the

irreparable harm prong").  Frontier waited more than two weeks to file

its petition for review of the Final Order, and then another two weeks

before filing an "emergency" motion for a stay.  In the interim, it failed to seek a stay from the agency.  *See supra* pp. 8-9.  That lack of diligence indicates that Frontier does not stand to suffer irreparable harm.  *See Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (per curiam) (holding that a 44-day delay "bolstered" the conclusion that an injunction was unnecessary to prevent irreparable injury).

### B.    The public interest weighs against a stay.

Granting the requested stay would harm the government and the public interest.  *See Nken*, 556 U.S. at 435 ("These factors merge when the Government is the opposing party.").  Congress directed DOT to act quickly in granting slot exemptions pursuant to the FAA Reauthorization Act of 2024, so that the public could benefit from increased flight availability at National Airport.  *See* 49 U.S.C. § 41718(i)(1).  But granting the stay motion would hold open two of those slot exemptions indefinitely, depriving the public of additional flight options.  It would also deprive the public of "competition" and additional "options for nonstop travel" to airports that are ordinarily beyond the perimeter for flights from National Airport.  *See id.*

§ 41718(i)(4)(B).  Frontier agrees (Mot. 21) that those congressional objectives should be considered in assessing the public interest, but a stay would harm—not promote—them.  *See* Show Cause Order 24-25.

A stay also would upset Alaska's and consumers' reliance interests in the Final Order.  Frontier's own affiant indicates that consumers are already able to purchase tickets on Alaska's flight to San Diego, and that Alaska has made significant investments in the route.  Flyr Aff. ¶¶ 13-15.  A stay would require Alaska to cancel those flights and force consumers to make alternative travel plans for flights beginning on March 17.  The disruption to those consumers' travel plans could not be repaired at the end of this litigation.  And to the extent that Frontier expresses concern for Alaska's economic interests (Mot. 19-20), the government merely notes that Alaska is a sophisticated entity that can protect its own interests.

## C.    If the Court grants a stay, it should stay the Final Order in full.

If this Court were to grant a stay, however, it should stay the Final Order as to all the slot exemptions.  Assuming that DOT erred in categorizing Alaska as a limited incumbent air carrier, the agency would need to reconsider whether Alaska should have received any of

22

the slot exemptions reserved for non-limited incumbents.  In other words, the Final Order is not severable in the way Frontier suggests.  A full stay would therefore be warranted.

## IV.  The government does not object to an expedited briefing schedule.

Frontier also seeks to expedite consideration of this case and proposes a schedule under which briefing would be complete seven weeks after the Court's disposition of the stay motion.  *See* Mot. 23-24.  The government does not object to expedition but notes that even Frontier's proposed schedule is unlikely to result in a final disposition by March 17, 2025, the date on which Alaska is scheduled to begin service to San Diego and on which Frontier premises its purported need for emergency relief.  *See* Mot. 22; Final Order 10.  The government therefore proposes the following schedule:

- **Certified Index to the Record:** February 10, 2025;

- **Petitioner's Opening Brief:** February 24, 2025 (21 days after petitioner's reply in support of the stay motion);

- **Respondent's Brief:** March 17, 2025 (21 days after petitioner's brief);

- **Intervenor's Brief:** March 24, 2025 (7 days after respondent's brief);

23

- **Petitioner's Reply Brief:** April 7, 2025 (14 days after intervenor's brief).

The government believes this schedule will permit the prompt and orderly resolution of the petition, including allowing oral argument to be scheduled during this Term (should the Court choose to hear argument).

## CONCLUSION

For the foregoing reasons, this Court should deny Frontier's motion to partially stay the Final Order pending review in this Court.

Respectfully submitted,

BRETT A. SHUMATE
  *Acting Assistant Attorney*
  *General*

MICHAEL S. RAAB
 */s/ Simon C. Brewer*
SIMON C. BREWER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7529*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5367*
  *Simon.C.Brewer@usdoj.gov*

January 2025

24

# CERTIFICATE OF COMPLIANCE

This response to a motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2) because it contains 4608 words. This response also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Simon C. Brewer*
Simon C. Brewer

**CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2025, I electronically filed the foregoing response to a motion with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system

*/s/ Simon C. Brewer*
Simon C. Brewer