**[ORAL ARGUMENT NOT SCHEDULED]**

No. 25-1002

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

FRONTIER AIRLINES, INC.,

Petitioner,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION,

Respondent,

ALASKA AIRLINES, INC.,

Respondent-Intervenor.

_____

On Petition for Review of a Final Order
of the United States Department of Transportation

_____

**REPLY IN SUPPORT OF PETITIONER'S EMERGENCY MOTION TO PARTIALLY STAY THE DEPARTMENT OF TRANSPORTATION'S DECEMBER 17, 2024 FINAL ORDER AND FOR EXPEDITED CONSIDERATION OF THE APPEAL**

_____

        LORENE L. BOUDREAU
        *Ballard Spahr LLP*
        *1735 Market St., 51st Floor*
        *Philadelphia, PA 19103-7599*
        *(215) 864-8245*
        *Counsel for Petitioner Frontier Airlines, Inc.*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ..................................................................................................... 1

    A.    Frontier's Motion is proper. ................................................................. 1

    B.    The Court should partially stay DOT's Final Order. ........................... 2

        1.    Frontier will likely prevail on the merits. ................................. 2

        2.    Irreparable harm. ........................................................................ 9

        3.    Harm to other parties. .............................................................. 10

        4.    Public interest........................................................................... 10

    C.    The Court should partially stay the Final Order. ............................... 10

    D.    The Court should grant expedited review. ........................................ 11

III. CONCLUSION ............................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of Bos.*,
　996 F.3d 37 (1st Cir. 2021) ............................................................................... 2

*Cuomo v. NRC*,
　772 F.2d 972 (D.C. Cir. 1985) .......................................................................... 2

*Eagle Pharmaceuticals, Inc. v. Azar*,
　952 F.3d 323 (D.C. Cir. 2020) .......................................................................... 4

*Gorman v. NTSB*,
　558 F.3d 580 (D.C. Cir. 2009) .......................................................................... 7

*Gross v. FBL Fin. Servs., Inc.*,
　557 U.S. 167 (2009) .......................................................................................... 4

*In re NTE Connecticut, LLC*,
　26 F.4th 980 (D.C. Cir. 2022) ........................................................................... 9

**Statutes**

21 U.S.C. § 841 ........................................................................................................ 8

21 U.S.C. § 960 ........................................................................................................ 8

49 U.S.C. § 41714 .................................................................................................... 8

49 U.S.C. § 41714(a)(2) ........................................................................................... 3

49 U.S.C § 41714(d) ................................................................................................ 3

49 U.S.C. § 41714(h)(3) ........................................................................................... 4

49 U.S.C. § 41714(h)(4) ........................................................................................... 3

49 U.S.C. § 41714(h)(5) ........................................................................................... 4

49 U.S.C. § 41714(h)(5)(B) ..................................................................................... 4

49 U.S.C. § 41714(k) ............................................................................................... 8

49 U.S.C. § 41718(i)(1) ............................................................................................1

49 U.S.C. § 41718(i)(3) .......................................................................................3, 4

49 U.S.C. § 46110(c) ............................................................................................10

49 U.S.C. § 46110(d) ..............................................................................................2

Pub. L. No. 103-305, 108 Stat. 1569 (1994) ..........................................................5

**Other Authorities**

14 C.F.R. § 93.123 ..................................................................................................3

57 Fed. Reg. 37,308 (Aug. 18, 1992) .....................................................................5

Federal Rule of Appellate Procedure 18(a)(2)(A) .................................................1

H.R. Rep. No. 106-167, pt. 2 (1999) ......................................................................4

# **GLOSSARY**

| | |
|---|---|
| DCA | Ronald Reagan Washington National Airport |
| DOT | Department of Transportation |
| FAA | Federal Aviation Administration |
| FAA 2024 | FAA Reauthorization Act of 2024, Pub. L. No. 118-63, 138 Stat. 1025, 49 U.S.C. § 41718(i) |
| SAN | San Diego International Airport |
| SJU | Luis Muñoz Marín International Airport |

# I. INTRODUCTION

Respondent Department of Transportation (DOT) and Respondent-Intervenor Alaska Airlines oscillate between ignoring and rewriting the law. But a straightforward reading of the statute—as well as the regulations, DOT's prior holdings, and caselaw—leads to one clear result: Frontier Airlines qualifies for the limited incumbent slot exemptions and Alaska does not.

# II. ARGUMENT

## A. Frontier's Motion is proper.

Federal Rule of Appellate Procedure 18(a)(2)(A) allows parties to initially move for a stay with the Court if moving first with the agency is "impracticable." That is the case here.

In its December 17, 2024 Final Order, DOT directed Alaska to start service within 90 days. Frontier thus needed a quick response to its motion. DOT, however, had not been timely throughout the proceeding. On May 16, 2024, DOT was directed to award slot exemptions within 60 days. 49 U.S.C. § 41718(i)(1). DOT did not issue its tentative ruling for 153 days. Mot., Ex. H. It took DOT 62 additional days to make its tentative rulings final—without change—exceeding the deadline by five months. Mot., Ex. I. Given the immediacy of the issue, DOT's delays, and the added hindrances of the holidays and the administration change, it was impracticable to first move with DOT.

DOT's and Alaska's cited cases do not require otherwise, some considering the stay motion first filed in court. *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of Bos.*, 996 F.3d 37, 44 (1st Cir. 2021). Likewise, 49 U.S.C. § 46110(d)'s requirement that objections be made first in the agency proceeding is inapposite.

Importantly, DOT agrees the Court should expedite consideration, presumably to avoid the harm to Frontier, Alaska, and consumers in deciding the matter after Alaska establishes its new service. For this very reason—to obtain a prompt merits decision and avoid, or at least mitigate, immediate harm—it was proper and pragmatic for Frontier to initially seek both a stay and expedited consideration from this Court.

**B.     The Court should partially stay DOT's Final Order.**

When considering a stay motion, the Court balances the four factors; a "stay may be granted with either a high probability of success and some injury, or vice versa." *Cuomo v. NRC*, 772 F.2d 972, 974 (D.C. Cir. 1985).

**1.     Frontier will likely prevail on the merits.**

Although Frontier presents two issues—Frontier is a limited incumbent; Alaska is not—a likelihood of success on either satisfies this factor.

**a.     Frontier is a limited incumbent.**

DOT's and Alaska's argument relies on a single, faulty premise: that a

2

statutory exception explicitly confined to one subsection actually applies throughout the statute. From this distortion, they assert it is permissible to hold that Frontier is simultaneously an incumbent that operates at DCA *and* a new entrant that does not operate at DCA. This error requires vacatur.

FAA 2024 creates "a two-part test for eligibility: first, a carrier must be an incumbent on the date of enactment of FAA 2024; and second, a carrier must then also qualify for status as a limited incumbent, or non-limited incumbent carrier." Mot., Ex. H at 19; 49 U.S.C. § 41718(i)(3). DOT concluded—and does not now dispute—that Frontier is an incumbent under part one because it operates six slot exemptions at DCA. Mot., Ex. H at 19. There are only two options for part two because there are only two types of incumbent: a limited incumbent or a non-limited incumbent. There is no "new entrant incumbent."

To conclude otherwise, DOT and Alaska rewrite the statute. Specifically, both claim "[a] slot exemption is, by statutory definition, not a slot." DOT Resp. at 11; Alaska Resp. at 15–16. That is false. The statute defines "slot" as "a reservation for a[] . . . takeoff or landing." 49 U.S.C. § 41714(h)(4). There is no separate definition for "slot exemption" because its meaning is the same. What distinguishes "slots" from "slot exemptions" is that the latter adds to an airport's hourly takeoff and landing limits. *Id.* § 41714(a)(2), (d); 14 C.F.R. § 93.123.

For the first six years slot exemptions existed, Congress did not distinguish

3

slot exemptions from slots. It discussed them identically. H.R. Rep. No. 106-167, pt. 2, at 12 (1999) (explaining the purpose of slot exemptions was to "increase the number of slots available"). In 2000, Congress first mentioned slot exemptions in the limited incumbent definition, declaring that "'slot' shall include 'slot exemptions.'" 49 U.S.C. § 41714(h)(5)(B) (2001). Congress only stopped counting slot exemptions for limited incumbents in 2012. But in doing so, Congress expressly confined this qualification to the limited incumbent definition. 49 U.S.C. § 41714(h)(5).

The result is that, contrary to DOT's determination, Frontier cannot be only a new entrant. That is because a new entrant is "an air carrier that does not hold a slot at [DCA] . . . and a limited incumbent carrier." *Id.* § 41714(h)(3).[1] "Slot" in the new entrant definition includes slot exemptions—as it historically has, and also because Congress did not later exclude it like it did for limited incumbents. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174–75 (2009) ("When Congress amends one statutory provision but not another, it is presumed to have acted intentionally," especially for language in the same statute); *Eagle Pharmaceuticals, Inc. v. Azar*, 952 F.3d 323, 339 (D.C. Cir. 2020) (courts cannot "read[] a limitation into the

---

[1] Frontier *could* be a "new entrant" by virtue of the definition including "limited incumbent carrier." But to be eligible for the operative slot exemptions, Frontier must be a "limited incumbent carrier" in the first instance. 49 U.S.C. § 41718(i)(3).

4

[statute's] text that is not there"). Thus, if Frontier is not a limited incumbent because it holds "fewer than" 40 slots, Frontier is improperly without a category.[2]

While DOT largely ignores the limited scope of the exclusion, Alaska blatantly rewrites it by guessing the new entrant definition "likely also incorporates the limited incumbent definition's exclusion of slot exemptions[.]" Alaska Resp. at 19. Neither ignoring nor guessing provides grounds to alter a statute, certainly not to create a self-contradictory "new entrant incumbent" category.

Realizing the absurdity of DOT qualifying Frontier as both an incumbent and a new entrant, Alaska spends much of its brief attacking DOT's conclusion at *step one* that Frontier is an incumbent. *Id*. at 14–19. Yet Alaska took the opposite position in the proceedings, agreeing that Frontier is "an 'incumbent air carrier' at DCA . . . [because] it operated three roundtrip flights using slot exemptions."[3] It also cannot be disputed that, as DOT concluded, "Frontier was engaged in air transportation at DCA on the date of enactment of FAA 2024, therefore qualifying

---

[2] Alaska is wrong that, by not defining "non-limited incumbent," Congress did not intend the statute to encompass all carriers. Alaska Resp. at 19–20. From the beginning, Congress understood that, by defining "limited incumbent," it was also defining "non-limited incumbents," and covering all carriers. *See* High Density Traffic Airports, 57 Fed. Reg. 37,308-11 (Aug. 18, 1992); Pub. L. No. 103-305, 108 Stat. 1569 (1994) (adopting DOT's definitions).

[3] Alaska Airlines Answer, Docket DOT-OST-2024-0065-23596 (Nov. 8, 2024) at 5, https://www.regulations.gov/document/DOT-OST-2024-0065-23596.

5

as an incumbent air carrier." Mot., Ex. H at 20. For its part, DOT focuses solely on its step two conclusion, avoiding the conflict it created and cannot reconcile.

As explained in the Motion, a straightforward application of the statute avoids DOT's capricious reading: (1) Frontier is an incumbent because it operates at DCA; and (2) Frontier is a limited incumbent because it operates "fewer than" 40 slots.

DOT and Alaska complain Frontier collapses the new entrant and limited incumbent definitions (more than the statute does itself by qualifying all limited incumbents as new entrants). DOT Resp. at 14; Alaska Resp. at 14–15. That is not so. The statute's plain language keeps these definitions meaningfully separate: a carrier that does not operate at DCA is a new entrant; a carrier that operates at DCA with "fewer than" 40 slots (like Frontier) is a limited incumbent.

This reading is consistent with DOT's numerous holdings that Frontier is a limited incumbent, even though Frontier has only ever operated through slot exemptions. Importantly, DOT made these determinations before *and* after the 2012 amendment that added the slot exemption exclusion. Mot. at 4–5.

DOT attempts to excuse its statement in the 2012 order—"Frontier confirms its status as a limited incumbent carrier," Mot., Ex. D at 8—by asserting it "neither endorsed nor rejected this characterization." DOT Resp. at 15. But that contradicts DOT's practice of scrutinizing a carrier's eligibility *before* addressing the merits of

6

its application, including in 2012. Mot., Ex. D at 20 ("Although JetBlue will have the largest DCA operation of all the applicants, it remains qualified as a limited incumbent."). Indeed, DOT's assertion that it did not endorse Frontier's status in 2012 is belied by what it did here: Frontier confirmed its status as a limited incumbent, but DOT spent significant effort asserting Frontier is not (albeit without distinguishing its precedent), avoiding the merits of Frontier's application altogether.

　　Frontier's limited incumbent status is also consistent with the only on-point case offered to interpret "fewer than." In *Gorman v. NTSB*, 558 F.3d 580 (D.C. Cir. 2009), in the context of categorizing aircraft, DOT's sub-agency, FAA, determined that "less than 20 seats" includes zero seats. *Id.* at 588. DOT argues that *Gorman* is somehow inapposite because the Court said statutory headings affirmed its holding. But that helps Frontier. The relevant headings in § 41714(h) are "new entrant air carrier" and "limited incumbent air carrier." One would be remiss to categorize an incumbent carrier with active operations as a "new entrant" and not a "limited incumbent."

　　DOT and Alaska attempt counterexamples to *Gorman* in separate contexts, but none hold up. For instance, 2024 U.S. Sentencing Guidelines Manual § 2D1.1(c)(17) qualifies its "[l]ess than 1KG of Marihuana" range with the fact that this section only applies to someone first convicted of possessing *some amount*

7

of marihuana under 21 U.S.C. §§ 841 or 960. Their other imagined examples are less persuasive; in fact all accurately include zero. Regardless, the only way to harmonize 49 U.S.C. § 41714 is by qualifying Frontier as a limited incumbent because it operates at DCA with "fewer than" 40 slots.

### b. Alaska is not an eligible limited incumbent.

Alaska's ineligibility is obvious. Alaska has a codeshare agreement with American. This agreement includes DCA, where they hold 522 slots combined. Mot. at 6 n.9. Alaska thus cannot be a limited incumbent. 49 U.S.C. § 41714(k).

DOT and Alaska palliate the codeshare as too limited to count. Their position fails for two clear reasons. First, the statute says *nothing* about different types of codeshares. There either is a codeshare or there is not. And no one disputes that Alaska has a codeshare with American. Second, Alaska fails DOT's invented "meaningful access" test. Mot., Ex. H at 22. Although DOT and Alaska exhaust all that the Alaska-American codeshare is not, they omit what it is: Alaska *can* display its code on every American flight at DCA (except those to Los Angeles), and is currently doing so on 100 different routes, totaling 794 flights per week—far exceeding the 20 slot limit for codeshares.[4] This is what DOT labels:

---

[4] Letter re Spirit Eligibility, Docket DOT-OST-2024-0065-0007 (June 26, 2024) at 3, https://www.regulations.gov/document/DOT-OST-2024-0065-0007; 49 U.S.C. § 41714(k).

8

"Frontier's quibble." DOT Resp. at 17. Under any definition this is "meaningful access," and precisely what the codeshare provision sought to remedy: airlines with outsized access at DCA preventing other carriers from entering the market and increasing competition.

2.   **Irreparable harm.**

DOT and Alaska underscore the irreparable harm Frontier will suffer without a stay. Both claim Frontier can recover its losses through competition. DOT Resp. at 17–18; Alaska Resp. at 23. That is not true.

Slot exemptions at DCA are extremely valuable and seldom created. Since 2000, Congress provided new ones on only four occasions. None were created in the prior 12 years, and there is no promise that Congress will authorize more. No amount of competition will provide Frontier access to this coveted airport.

Frontier's harm is the same as the petitioner in *In re NTE Connecticut, LLC*, 26 F.4th 980 (D.C. Cir. 2022). There, the Court found irreparable harm because, without a stay, the petitioner would lose its ability to participate in an energy auction, which the agency would likely not rerun due to reliance interests. *Id.* at 990–91. Likewise here. If the Court finds that both Frontier and (somehow) Alaska are eligible limited incumbents and remands to DOT to consider the merits of the respective applications, then without a stay it is exceedingly unlikely that DOT would fairly weigh Frontier's proposed DCA–SJU route against Alaska's ongoing

9

DCA–SAN route. Frontier's inability to fairly compete, even if it prevails on the merits, is irreparable harm.

3. **Harm to other parties.**

It is not credible, as Alaska argues, that it and the public will suffer *more* harm by staying Alaska's DCA–SAN service now—more than a month before it starts and while consumers have time to adjust—than *after* the service begins. To that end, Alaska represents it has sold 1,662 tickets on its DCA–SAN flight. SA3. That is around five roundtrips on Alaska's 159-seat airplanes. Without a stay, Alaska's harm will be orders of magnitude greater if Frontier is ultimately awarded the slot exemptions.

4. **Public interest.**

Alaska asserts it will make "around $32 million dollars [sic] in revenue annually from ticket sales." Alaska Resp. at 24. Juxtapose that to Frontier's projected $5.7 million. Mot. at 19. Beyond what Frontier cited as public benefits in its Motion, *id.* at 20–22, Alaska's intention to charge consumers an additional $26 million underscores where the public's interest lies.

C. **The Court should partially stay the Final Order.**

Consistent with 49 U.S.C. § 46110(c), Frontier requests a partial stay (and review) of DOT's Final Order regarding the only relevant slot exemptions. DOT claims the entire Final Order must be stayed so that, on remand, Alaska can apply

10

for the non-limited incumbent slot exemptions that are not at issue. DOT Resp. at 22–23. Notably, Alaska does not make this request. And it should be denied. Not only would this harm parties whose eligibility is not in dispute, DOT's Order is severable because its consideration of limited incumbent applications was wholly distinct from its consideration of non-limited incumbent applications.

In addition, Alaska could have applied for the non-limited incumbent slot exemptions in the original proceedings, even in the alternative. Although other carriers urged it to, Alaska declined. Mot. at 7 n.13.

**D.  The Court should grant expedited review.**

At minimum, the Court should grant expedited review to minimize the harm that will befall all interested parties if Alaska is arbitrarily allowed to begin its new flight on March 17. Frontier and DOT agree expedited consideration is proper. Only Respondent-Intervenor Alaska disagrees, but the Court should not countenance such brinkmanship. Besides a partial stay, expedited review is the best way to balance the parties' interests and lessen the harms from DOT's clear mistake.

That said, Frontier disagrees with DOT's briefing schedule. DOT requests a time period for Frontier's opening brief that would begin to run before the Court orders this deadline. Further, all parties would benefit from receiving a ruling on the instant Motion before drafting merits briefs so that the parties can focus on

11

what the Court deems most salient. Frontier thus renews the proposal in its Motion.

### III.  CONCLUSION

Frontier requests that the Court partially stay DOT's Final Order and expedite consideration of this appeal.

        Respectfully submitted:

        /s/ Lorene L. Boudreau
        Lorene L. Boudreau
        D.C. Circuit #55126
        BALLARD SPAHR LLP
        1735 Market Street, 51st Floor
        Philadelphia, PA 19103-7599
        Direct: 215.864.8245
        Fax: 215.864.8999
        boudreaul@ballardspahr.com

        *Counsel for Petitioner Frontier Airlines, Inc.*

DATED: February 3, 2025

# CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Lorene Boudreau, counsel for Petitioners and a member of the Bar of this Court, certify pursuant to Federal Rules of Appellate Procedure 27(d) and 32(g) that the foregoing Reply in Support of Petitioner's Emergency Motion to Partially Stay the Department of Transportation's December 17, 2024 Final Order and for Expedited Consideration of the Appeal is proportionally spaced, has a serif typeface of 14 points or more, and contains 2,595 words.

        Respectfully submitted:

        /s/ Lorene L. Boudreau
        Lorene L. Boudreau
        D.C. Circuit #55126
        BALLARD SPAHR LLP
        1735 Market Street, 51st Floor
        Philadelphia, PA 19103-7599
        Direct: 215.864.8245
        Fax: 215.864.8999
        boudreaul@ballardspahr.com

        *Counsel for Petitioner Frontier Airlines, Inc.*

Dated: February 3, 2025

# CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2025, I electronically filed the foregoing Reply in Support of Petitioner's Emergency Motion to Partially Stay the Department of Transportation's December 17, 2024 Final Order and for Expedited Consideration of the Appeal with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Service of a true and accurate copy of the same occurred through the appellate CM/ECF system upon the following:

Michael S. Raab
Simon Christopher Brewer
*Attorneys for Respondent*

Shay Dvoretzky
Parker Andrew Rider-Longmaid
Sarah Leitner
*Attorneys for Respondent-Intervenor*

Respectfully submitted:

/s/ Lorene L. Boudreau
Lorene L. Boudreau
D.C. Circuit #55126
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Direct: 215.864.8245
Fax: 215.864.8999
boudreaul@ballardspahr.com

*Counsel for Petitioner Frontier Airlines, Inc.*