No. 25-1002

# In the United States Court of Appeals for the District of Columbia Circuit

FRONTIER AIRLINES, INC.,

*Petitioner*,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION,

*Respondent,*

ALASKA AIRLINES, INC.,

*Intervenor.*

On Petition for Review of a Final Order of the U.S. Department of Transportation

**Spirit Airlines, Inc.'s Reply in Support of Motion Seeking Leave to Intervene**

Joanne W. Young
*Counsel of Record*
David M. Kirstein
Donald L. Crowell III
KIRSTEIN & YOUNG PLLC
1750 K Street NW, Suite 700
Washington, DC  20006
(202) 331-3348

*Counsel for Spirit Airlines, Inc.*

## GLOSSARY

| | |
|---|---|
| 2024 FAA Reauthorization | FAA Reauthorization Act of 2024, Pub. L. No. 118-63, 138 Stat. 1025 |
| Alaska | Alaska Airlines, Inc. |
| DCA | Ronald Reagan Washington National Airport |
| DOT | Department of Transportation |
| Frontier | Frontier Airlines, Inc. |
| Spirit | Spirit Airlines, Inc. |

SPIRIT AIRLINES, INC.'S REPLY
IN SUPPORT OF MOTION SEEKING LEAVE TO INTERVENE

Ironically and without claiming any prejudice, Intervenor Alaska recognized its requirement to serve Spirit as an interested party in its own case, yet now argues Spirit has no interest in intervening in a related case. The arguments raised by Alaska and DOT fail for two primary reasons. *First*, Spirit is intervening on the issues Frontier raised: (1) the definition of a limited incumbent carrier; and (2) the application of 49 U.S.C. § 41714(k) to Alaska's codeshare relationship at DCA. Both issues impact Spirit's eligibility both now, and for future slot or exemption awards at DCA and other airports. *Second,* as Alaska does not dispute, the 30-day filing date in Rule 15(d) is not jurisdictional. It is "on the claim-processing-rule side of the line, a side that permits forfeiture and equitable exceptions to the deadline." *Int'l Union of Operating Eng'rs, Local 18 v. NLRB*, 837 F.3d 593, 596 (6th Cir. 2016), including under Rule 26(b) for Frontier's failure to serve Spirit and comply with Fed. R. App. P. 15(c).

Lastly, it bears emphasizing Alaska's disingenuous statement that its vacatur request in case no. 1062 relates just to "80%" of the DOT Order. Alaska Resp. 7. Alaska cannot hide what is glaringly written on its petition: "Alaska files this conditional cross-petition to allow it … *to seek vacatur of the full Order* …." Petition for Review, at 1, No. 1062, (Feb. 14, 2025) (emphasis added). As Alaska puts it, "obviously," the full Order cannot mean just some portions of it. Alaska Resp. 7.

- 1 -

## A. Spirit's Intervention Seeks to Address the Same Issues and Relief Raised by Frontier's Petition for Review

Spirit's intervention would directly address points "relevant to the issues before this court," D.C. Cir. R. 28(d)(2), which are presented by Frontier's petition in this case:

1. whether "DOT's conclusion that Frontier does not qualify as a 'limited incumbent carrier' at DCA" was erroneous, Frontier Br. 4; and,

2. whether "DOT's conclusion that Alaska is eligible for slot exemptions as a 'limited incumbent carrier' at DCA" notwithstanding Alaska's codeshare relationship with American under which they are counted as each holding 521 slots at DCA, "far exceed[ing] the 20-slot threshold for eligibility," was erroneous, Frontier Br. 4.

If the Court finds Alaska ineligible, it would need to decide a remedy and what is to happen to the slot exemptions Alaska erroneously received. If the Court finds that DOT erred in its definition of "incumbent" or "limited incumbent" as applied to Frontier, it would similarly need to determine the appropriate relief to grant. Nothing about Spirit's interest in this case or the issues it would raise as an intervenor deviates from the statement of issues presented by Frontier.

Alaska and DOT are wrong that Spirit would be raising new issues in this case. In the proceeding below, Frontier failed part two of the two-part test DOT implemented: (1) whether a carrier is an incumbent (*i.e.,* not a new entrant); and (2) whether the carrier is a limited incumbent. Frontier addresses both parts of the test in its brief.

As to part one, DOT decided Frontier was an incumbent based on a never-before used definition of "incumbent" which conflicts with statutory text and DOT precedent. This Court would need to evaluate part one of the test to conclude Frontier was eligible for the limited incumbent slot exemptions. As to part two, DOT determined Frontier was not a "limited incumbent carrier" because it has never held a slot at DCA. Under the same definition, DOT found that Spirit was a limited incumbent carrier because Spirit has held slots at DCA since December 1985.

Frontier is challenging the definition of a "limited incumbent carrier" under which Spirit qualifies. Spirit is intervening on issue #1 to protect its status and the statutory definition of a "limited incumbent"—both in this proceeding as well as for slot or exemption awards in the future which this Court's decision would impact (including if, for example the two limited incumbent slot exemptions here are returned by a carrier to DOT for reallocation in the future).

As Spirit would argue based on statutory and regulatory text, as well as DOT and FAA precedent, the purpose of the "incumbent" language in part one of the DOT test is to disqualify any "new entrant" from being eligible for the limited incumbent slot exemptions. This is because the term "incumbent" is used in the context of slot regulation to identify a carrier which has at any point since December 1985 held, or currently operates, a slot at DCA. There are two kinds of incumbent carriers based on statutory language and DOT precedent: a "limited incumbent" and a "non-limited incumbent." There is also a category of carrier defined as a "new entrant," which is not an "incumbent." Spirit intends to address these issues which are wholly encompassed by Frontier's Issue #1 on whether Frontier qualifies as a limited incumbent carrier eligible to receive slot exemptions under the 2024 FAA Reauthorization. Frontier itself addresses the "incumbent" definition in its own brief to support its argument on Issue #1, *see* Frontier Br. 23-25, 28. Spirit would do the same to show why Frontier's and the DOT's positions are wrong.

Spirit is also intervening to support Frontier's Issue #2, *i.e.,* that Alaska was wrongly awarded the DCA slot exemptions due to its codeshare arrangements rendering it ineligible. Nothing about Spirit's interest in this case or the issues it would raise as an intervenor deviates from the issues Frontier has raised in its petition.

B. **Spirit Has a Legal Interest in What Happens Next If the Court Reverses DOT's Definition of a "Limited Incumbent" or Disqualifies Alaska under 41714(k)**

If the Court overturns any part of the DOT decision on the issues raised by Frontier, it would need to decide what to do with the slot exemptions wrongly awarded to Alaska. Spirit has an interest in how this Court shapes the relief requested by Frontier, namely vacatur and remand, *see* Frontier br. 4, 7. How the Court decides the issue of Frontier's eligibility as an "incumbent" and "limited incumbent" would also impact Spirit's eligibility for the slot exemptions in this case as well as for future slot awards at DCA or any restricted airport – including eligibility for slots returned by other carriers to be reallocated. *See, e.g., Spirit Airlines, Inc. v. United States Department of Transportation*, 997 F.3d 1247 (D.C. Cir. 2021) (Spirit challenge pursuing flight authorizations at Newark Liberty International Airport returned by Southwest Airlines to DOT/FAA).

C. **Alaska's Characterization of the Cases it Cites is Wrong or Inapplicable**

Alaska mischaracterizes that "this Court regularly denies intervention where the proposed intervenor seeks to expand the scope of relief the petitioner seeks." Alaska Resp. 2. First, because that is not what Spirit seeks to do. And second, because intervention was *not* denied in any of the cases Alaska cited. While the Court may not always decide a case on the issues raised by an intervenor, as Alaska's cases

show, it generally grants intervention and waits until the merits to decide any concerns over substance.

This is true in each case cited on this point by Alaska, contrary to what Alaska represents in its Response. *See Petro Star Inc.*, 835 F.3d 97, 110 (D.C. Cir. 2016) (allowing intervention and ultimately "not reach[ing] the merits of [intervenor the State of Alaska's] argument."); *Nat'l Ass'n of Regulatory Util. Comm'rs v. Interstate Commerce Comm'n*, 41 F.3d 721, 730 (D.C. Cir. 1994) (allowing intervention and deciding in opinion that "none of the arguments presented by [intervenor] *in any way affects the petitioners' claims or the ICC's responses.*" (emphasis added)); *Cal. Dep't of Water Res. v. FERC*, 306 F.3d 1121, 1126-27 (D.C. Cir. 2002) (allowing intervention, dismissing original party's petition for lack of jurisdiction, and finding no separate "jurisdiction to consider the intervenor's contentions."); *Ill. Bell Tel. Co. v. FCC*, 911 F.2d 776, 785-86 (D.C. Cir. 1990) (allowing intervention but not accepting new issue raised by intervenor).[1] Importantly, however, in each case Alaska

---

[1] Questionably, Alaska also cites, *Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1944), which appears completely unrelated to Spirit's intervention under Fed. R. App. P. 15(d). *Vinson* dealt with the Emergency Price Control Act of 1942. Specifically, the scope of the Office of Price Administration Administrator's power under that statute to intervene in "Federal, State, or municipal authority" proceedings to increase public utility rates – in that case before the Public Utilities Commission of the District of Columbia." *Vinson*, 321 U.S. 489, 491 (1944).

cites intervenors have been given at least the opportunity to intervene and present their arguments on the issues before the Court.

Although not determinative here since Spirit is not raising new issues, Alaska fails to mention that in many of its cited cases, as well as in the *Synovus* case which Alaska relied on in its own motion to intervene, *see* Alaska Mot. to Intervene 5, (citing *Synovus Financial Corp. v. Board of Governors of the Federal Reserve System*, 952 F.2d 426, 433 (D.C. Cir. 1991)), this Court regularly holds that "the general rule that 'an intervening party may join issue only on a matter that has been brought before the court by another party … is a prudential restraint rather than a jurisdictional bar." *Synovus Fin. Corp. v. Bd. of Governors of Fed. Res. Sys.*, 952 F.2d 426, 434 (D.C. Cir. 1991) ("Like other such doctrines - exhaustion of administrative remedies, for instance - the statement in *Illinois Bell* should not be applied categorically." (citation omitted)).

Another distinguishing factor here from the cases cited by DOT and Alaska is that those cases involved judicial review under statutes with mandatory deadlines to file a petition for review, without exception. *See, e.g., Ala. Power Co. v. Interstate Commerce Comm'n*, 852 F.2d 1361, 1367 (D.C. Cir. 1988) ("Direct review of ICC orders is governed by section 2344 of the Hobbs Act. 28 U.S.C. § 2344 (1982)," which has no exceptions). In contrast, the relevant statute here plainly allows filing

a petition for review after 60 days on "reasonable grounds." 49 U.S.C. § 46110(a). Alaska and DOT further ignore the fact that Spirit filing its own petition for review under 49 U.S.C. § 46110(a) – which it may still do "after the 60th day," *id.*, – would just create more delay and interruption to judicial resolution of the matter than by intervening in the two existing cases already challenging the same order and timely filing Spirit's brief.

### D. Frontier's Failure to Serve Spirit and this Court's Agency Case Intervention Rules Justify Good Cause to Allow Intervention in Both Cases

Alaska's primary reason for why Spirit should not be allowed to intervene in its case no. 1062 is that Spirit should file its own petition for review. This would be a convenient standard for any party wanting to keep a competitor out of its litigation—but Alaska cites no example of this Court or any Court deciding Rule 15(d) intervention on this basis. Indeed, it conflicts with the same cases Alaska cites as to intervenors being able to raise issues new issues in an existing case where standing exists to file a separate petition for review.

Alaska does not address this conflict at all. Its proposed litmus test effectively renders meaningless the distinction between the issue of standing a party has to intervene in a case to protect its interest based on issues already raised in that case, versus the jurisdiction a Court has to hear issues in the first instance. Under a plain

reading of the rules, Spirit has timely filed in Alaska case no. 1062 within the required 30-day deadline, so the court need not wander into the uncharted territory Alaska proposes.

In case no. 1002, the Court should waive or extend the 30-day deadline based on Frontier's egregious failure to serve Spirit—a failure which neither DOT nor Alaska dispute. Fed. R. App. P. 15(d) provides a non-jurisdictional filing deadline which may be waived or extended for cause under Fed. R. App. P. 26(b). *See Wilkins v. United States*, 598 U.S. 152, 157 (2023) (Courts will "treat a procedural requirement as jurisdictional only if Congress clearly states that it is." (quotation marks omitted)). Rule 15(d) contains no such clear jurisdictional statement or other context. Further, a motion to intervene is not among the limited set of filings for which Rule 26(b) specifies that courts may not extend the deadline. *See* Fed. R. App 26(b).

Rule 15(d) is, as the Sixth Circuit has explained, "straightforward[ly]" a non-jurisdictional "claim-processing rule that the courts of appeals can excuse." *Int'l Union of Operating Eng'rs, Loc. 18 v. NLRB*, 837 F.3d 593, 596 (6th Cir. 2016); *see also Zeigler Coal Co. v. Off. of Workers' Comp. Programs*, 490 F.3d 609, 610 n.1 (7th Cir. 2007) (excusing untimeliness under Rule 15(d) for good cause shown and allowing intervention).

- 9 -

Lastly, DOT raises a point about disruption to the briefing schedule which does not exist here. Spirit already indicated in its motion that it would abide by the existing schedule—and DOT itself states in Response that it "would not oppose a timely filed amicus brief." DOT Resp. 6. If that is true, then DOT cannot claim to be disrupted by the filing of an intervenor brief which under Fed. R. App. 27 is due on the exact same day.

For these reasons, Spirit's motion to intervene should be granted.

Dated: February 27, 2025                     Respectfully submitted,

                                                                           /s/ Joanne W. Young
Joanne W. Young
jyoung@yklaw.com
*Counsel of Record*
David M. Kirstein
dkirstein@yklaw.com
Donald L. Crowell III
dcrowell@yklaw.com
**Kirstein & Young PLLC**
1750 K Street NW, Suite 700
Washington, DC  20006
Phone: (202) 331-3348
Fax: (202) 331-3933

*Counsel for Spirit Airlines, Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that (1) this filing complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, as calculated by Microsoft Word, it contains 2234 words, excluding the parts of the filing exempted by Federal Rule of Appellate Procedure 32(f), and (2) this filing complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Charter font.

Dated: February 27, 2025

Respectfully submitted,

/s/ Joanne W. Young
Joanne W. Young

*Counsel for Spirit Airlines, Inc.*

## CERTIFICATE OF SERVICE

I certify that, on February 27, 2025, I electronically filed the foregoing motion with the United States Court of Appeals for the District of Columbia Circuit through the Court's CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the Court's CM/ECF system.

Dated: February 27, 2025

Respectfully submitted,

/s/ Joanne W. Young
Joanne W. Young

*Counsel for Spirit Airlines, Inc.*