**ORAL ARGUMENT SCHEDULED FOR MAY 8, 2025**
**No. 25-1002**

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

FRONTIER AIRLINES, INC.,

Petitioner,

SPIRIT AIRLINES, INC.,

Movant-Intervenor,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION,

Respondent,

ALASKA AIRLINES, INC.,

Respondent-Intervenor.

On Petition for Review of a Final Order
of the United States Department of Transportation

**REPLY BRIEF FOR PETITIONER FRONTIER AIRLINES, INC.**

Aaron Schaer
  *Counsel of Record*
BALLARD SPAHR LLP
13313 Balfour Ave.
Huntington Woods, MI 48070
(206) 223-7103
schaera@ballardspahr.com

Burt M. Rublin
BALLARD SPAHR LLP
1735 Market St., 45th Floor
Philadelphia, PA 19103-7599
(215) 864-8116
rublin@ballardspahr.com

*Counsel for Petitioner Frontier Airlines, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

GLOSSARY ............................................................................................. viii

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ............................ 1

II.     ARGUMENT .......................................................................................... 3

        A.     Frontier has standing to challenge Alaska's eligibility. ....................... 3

        B.     Frontier is a "Limited Incumbent Air Carrier" at DCA. ..................... 5

               1.     Frontier qualifies as a "Limited Incumbent Air Carrier.".......... 6

               2.     Frontier cannot be a "New Entrant Air Carrier.".................... 14

               3.     DOT's ruling is contrary to its prior orders. ........................... 19

        C.     Alaska is statutorily prohibited from obtaining the limited
               incumbent slot exemptions at DCA. ................................................. 20

        D.     The Spirit Airlines and San Diego County Regional Airport
               Authority briefs. ............................................................................... 27

III.    CONCLUSION ...................................................................................... 28

# <u>TABLE OF AUTHORITIES*</u>

**Page(s)**

**Federal Cases**

*Balt. Gas & Elec. Co. v. FERC,*
  954 F.3d 279 (D.C. Cir. 2020) ............................................................ 20

\**City & Cnty. of S.F., Cal. v. EPA,*
  145 S. Ct. 704 (2025) ............................................................... 17, 18

*Culbertson v. Berryhill,*
  586 U.S. 53 (2019) ........................................................................ 24

*Dep't of State v. Munoz,*
  602 U.S. 899 (2024) ........................................................................ 7

*Eastern Air Lines, Inc. v. FAA,*
  772 F.2d 1508 (11th Cir. 1985) ............................................................ 4

\**Gorman v. NTSB,*
  558 F.3d 580 (D.C. Cir. 2009) ............................................................ 10

*Gratiot Cmty. Hosp. v. NLRB,*
  51 F.3d 1255 (6th Cir. 1995) ........................................................ 10, 11

\**Gross v. FBL Fin. Servs.,*
  557 U.S. 167 (2009) .................................................................. 16, 17

*Gull Airborne Instruments, Inc. v. Weinberger,*
  694 F.2d 838 (D.C. Cir. 1982) ............................................................. 3

*Healthy Gulf v. FERC,*
  107 F. 4th 1033 (D.C. Cir. 2024) ........................................................ 20

*Jones v. Hendrix,*
  599 U.S. 465 (2023) ...................................................................... 12

*In re Ky. Processing Co.,*
  418 B.R. 217 (E.D. Ky. 2009) ............................................................ 11

---

*Authorities upon which we chiefly rely are marked with asterisks.

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024)...............................................................10, 20, 23

*Marx v. Gen. Revenue Corp.*,
   568 U.S. 371 (2013).....................................................................17, 18

*Me. Cmty. Health Options v. United States*,
   590 U.S. 296 (2020)............................................................................17

*Mem'l Hosp. of Laramie Cnty. v. Healthcare Realty Tr.*,
   509 F.3d 1225 (10th Cir. 2007) .........................................................11

*Mohamad v. Palestinian Auth.*,
   566 U.S. 449 (2012)............................................................................24

*Teton Historic Aviation Found. v. U.S. DOD*,
   785 F.3d 719 (D.C. Cir. 2015) .............................................................3

*United States v. Mullings*,
   330 F.3d 123 (2d Cir. 2003) ...............................................................10

*United States v. Alaska Air Grp., Inc.*,
   No. 1:16-cv-2377, 2017 WL 3674773 (D.D.C. June 23, 2017) .................25, 26

*United States v. Clintwood Elkhorn Mining Co.*,
   553 U.S. 1 (2008)................................................................................23

**Federal Statutes**

5 U.S.C. § 706(2)(A).................................................................................5

5 U.S.C. § 706(2)(C).................................................................................5

8 U.S.C. § 1762(c) .....................................................................................9

10 U.S.C. § 2922d(b) ................................................................................9

10 U.S.C. § 2922d(d) ................................................................................9

12 U.S.C. § 635t(1)(D) ..............................................................................9

15 U.S.C. § 636(a)(7)(C)(ii) ......................................................................9

15 U.S.C. § 1692k(a)(3).............................................................................18

18 U.S.C. § 1029(a)(1) ........................................................................9

20 U.S.C. § 1070a(b)(1)(A)(ii) ...........................................................9

20 U.S.C. § 1441(b)(1)(C)–(M) ..........................................................9

20 U.S.C. § 9871(b)(2)(A)(ii) .............................................................9

20 U.S.C. § 9871(b)(2)(A)(ii), (iv)–(vi), (ix)–(xiii) ...........................9

26 U.S.C. § 965(b)(5)(B) ....................................................................9

26 U.S.C. § 2642(a)(3)(B)(ii) .............................................................9

26 U.S.C. § 6433(a)(2)(B) ...................................................................8

29 U.S.C. § 1362(d)(A)(i) ...................................................................9

31 U.S.C. § 5318A(a)(1) ......................................................................9

37 U.S.C. § 302f(a)(1)–(2) ..................................................................9

37 U.S.C. § 355(a)(1) ..........................................................................9

42 U.S.C. § 415(i)(1)(B) ......................................................................9

46 U.S.C. § 12105(e)(2)(A) .................................................................8

49 U.S.C. § 41714(h) ...........................................................................6

*49 U.S.C. § 41714(h)(3) ...............................................1, 8, 15, 16, 18, 19

*49 U.S.C. § 41714(h)(4) ...................................1, 14, 15, 16, 18, 19

*49 U.S.C. § 41714(h)(5) ........................ 1, 5, 6, 8, 13, 15, 18, 19

49 U.S.C. § 41714(h)(5)(B) ...............................................................17

49 U.S.C. § 41714(h)(5)(B)(i) ..............................................................8

*49 U.S.C. § 41714(k) ........................ 1, 15, 20, 22, 23, 24, 25, 26

49 U.S.C. § 41716 ..............................................................................21

49 U.S.C. § 41717 ..............................................................................21

49 U.S.C. § 41718 ....................................................................21

*49 U.S.C. § 41718(i)(3) (FAA 2024)................ 1, 2, 5, 6, 13, 14, 19, 20, 21, 26, 27

49 U.S.C. § 41718(i)(4)(B)(ii) ...............................................27

50 U.S.C. § 1902(b)(2)(A)(i)–(iii) .........................................9

50 U.S.C. § 1902(b)(2)(B)(i)–(iii) .........................................9

Pub. L. No. 103-305, § 206, 108 Stat. 1569, 1587 (Aug. 23, 1994).........................7

Pub. L. No. 106-181, § 231, 114 Stat. 107, 108 (April 5, 2000) .............................24

**Rules**

D.C. Circuit Rule 28(a)(7) ......................................................3

Federal Rule of Civil Procedure 54(d)(1) ............................18

**Regulations**

14 C.F.R. Pt. 417, App. G, G417.9(c) ....................................9

14 C.F.R. Pt. 417, App. G, G417.11(c) ..................................9

14 C.F.R. Pt. 420, Appendix B(c)(1) .....................................9

14 C.F.R. § 17.9(a)..................................................................9

14 C.F.R. § 25.925(c)(1)..........................................................9

14 C.F.R. § 93.213(a)(1)..........................................................15

14 C.F.R. § 93.213(a)(2)..........................................................14

*14 C.F.R. § 93.213(a)(5).............................................5, 6, 8, 13, 15, 17

14 C.F.R. § 93.223(c)(3)..........................................................15

14 C.F.R. § 93.225(h) ............................................................15

14 C.F.R. § 101.35(d) .............................................................9

14 C.F.R. § 137.47 ..................................................................9

14 C.F.R. § 222.4(a) .......................................................................9

14 C.F.R. § 302.710 .......................................................................9

49 C.F.R. § 30.9(a)–(c) ..................................................................9

49 C.F.R. § 38.157(b) .....................................................................9

49 C.F.R. § 40.393(c) .....................................................................9

57 Fed. Reg. 37,308 (Aug. 18, 1992) .............................................7

**Other Authorities**

145 Cong. Rec. S12096 (daily ed. Oct. 6, 1999) .........................24

H.R. Rep. No. 106-167, pt. 1 (May 28, 1999) .............................24

H.R. Rep. No. 106-513 (March 8, 2000) ......................................24

Metropolitan Washington Airports Authority, Air Traffic Statistics,
   (January 2025),
   https://www.mwaa.com/sites/mwaa.com/files/2025-03/1-
   25%20ATS%20%283.6.25%29.pdf ...........................................21

S.Rep. No. 106-9 (March 8, 1999) ...............................................24

# __GLOSSARY__

| | |
|---|---|
| DCA | Ronald Reagan Washington National Airport |
| DOT | Department of Transportation |
| FAA | Federal Aviation Administration |
| FAA 2024 | FAA Reauthorization Act of 2024, Pub. L. No. 118-63, 138 Stat. 1025, 49 U.S.C. § 41718(i) |
| J.A. | Joint Appendix |

# I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Frontier Airlines' position relies on the plain language of the statute and regulation, which no party contends is ambiguous. In short, Frontier is a "limited incumbent air carrier" at Ronald Reagan Washington National Airport (DCA) because, undisputedly, Frontier is an "incumbent air carrier" that holds or operates "fewer than" 40 slots. 49 U.S.C. §§ 41714(h)(5), 41718(i)(3). Conversely, Alaska Airlines is not an eligible limited incumbent air carrier because it has a codeshare agreement with American Airlines at DCA that far "exceed[s] 20 slots and slot exemptions." *Id.* § 41714(k).

Frontier's reading is supported by numerous statutes and regulations which show that Congress and agencies know very well how to foreclose zero from a range of numbers when that is their intent. Abundant caselaw similarly supports Frontier's position that "fewer than" or "less than" includes zero. Frontier's interpretation also maintains a compatible and common sense reading of the statute, particularly Congress's decision to exclude "slot exemptions" from the term "slot" *only* in the "limited incumbent air carrier" definition, § 41714(h)(5), but *not* the immediately preceding definitions of "slot" and "new entrant air carrier," § 41714(h)(3) and (4). It further accords with the Department of Transportation's (DOT) treatment of Frontier in prior slot exemption proceedings.

In contrast, DOT and Alaska rely on disregarding the statute's unambiguous language in favor of an inconsistent fidelity to a grab-bag of interpretation tools. With that approach, and a notable dearth of legal support, they argue that, although Frontier is an "incumbent," it is not a "limited incumbent" because "fewer than" 40 actually means "at least one" or "between 1 and 39." They further proclaim that Alaska is an eligible limited incumbent because its extensive codeshare agreement with American somehow falls outside the statute's complete prohibition.

These atextual arguments lead to anomalous results, such as categorizing Frontier—an air carrier with consistent operations at DCA for over two decades— as a "new entrant," let alone a fictitious "new entrant incumbent" that is not recognized by the statute. DOT and Alaska are also simply wrong that the Alaska-American codeshare agreement—with a combined 522 slots and slot exemptions, over 100 routes, and over 800 weekly flights—is somehow rendered meaningless by a 2017 Final Judgment that places *de minimis* restrictions on their codeshare operations at DCA. In any event, that Final Judgment expires just two years from now in June 2027. At every turn, DOT and Alaska improperly rewrite the statute.

Accordingly, Frontier requests that the Court partially vacate and reverse DOT's Final Order and allocate to Frontier the two slot exemptions made available to limited incumbent carriers in the FAA Reauthorization Act of 2024 (FAA 2024).

## II.     ARGUMENT

### A.     Frontier has standing to challenge Alaska's eligibility.

DOT and Alaska do not dispute Frontier's standing to address its own eligibility. Their assertion that Frontier lacks standing to challenge Alaska's eligibility—tucked near the end of their respective briefs[1]—is baseless. As Frontier explained in its opening brief, Frontier Br. at 19–21, and as "apparent from the administrative record," D.C. Circuit Rule 28(a)(7), Frontier has Article III standing to challenge DOT's determinations that: (1) Frontier is ineligible for the only two slot exemptions at DCA reserved for limited incumbents; and (2) Alaska is eligible for those slot exemptions.

In closely analogous circumstances, this Court has long held that "disappointed bidders have standing to challenge the failure of an agency to follow the applicable statutes and regulations regarding contract awards." *Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 841 (D.C. Cir. 1982) (citing cases); *see also Teton Historic Aviation Found. v. U.S. DOD*, 785 F.3d 719, 724 (D.C. Cir. 2015) ("[A] plaintiff suffers a constitutionally cognizable injury by the loss of an *opportunity to pursue a benefit* . . . even though the plaintiff may not be able to show that it was *certain to receive* that benefit had it been accorded the lost

---

[1] Alaska did not argue that Frontier lacked standing to challenge Alaska's eligibility in the administrative proceedings. J.A. 454–64.

opportunity." (citation omitted)). Simply put, in a zero-sum game, a ruling that one applicant is eligible and the other is not unquestionably causes injury to the losing applicant, and affords the losing applicant standing to assert both its own eligibility and the ineligibility of its rival.

DOT and Alaska rely on a single inapposite case, *Eastern Air Lines, Inc. v. FAA*, 772 F.2d 1508 (11th Cir. 1985). DOT Br. at 31; Alaska Br. at 37. There, Eastern Air Lines challenged two FAA decisions: (1) its refusal to authorize Eastern's purchase of slots from Air Florida; and (2) its subsequent approval of a transfer of those same slots to Midway Airlines by virtue of Midway acquiring Air Florida in bankruptcy. *Id*. at 1509. On the first issue, for which Eastern unquestionably had standing, the court held that the slot sale to Eastern was prohibited. *Id.* at 1511. As a consequence, the court explained that Eastern lacked standing on the second issue because, even if Eastern prevailed in challenging the transfer to Midway, Eastern still would not be entitled to the slots. *Id*. at 1512. The court stressed that the two transactions "were not alike." *Id.* at 1511. "The former was purely and simply a sale of slots; the latter was not a sale of slots but the sale of Air Florida as a going concern." *Id*. Notably, the court went on to rule that "Eastern's claims could not succeed on the merits." *Id*. at 1512.

Frontier plainly has standing under Article III and this Court's precedents to challenge DOT's determinations regarding Frontier's and Alaska's eligibility.

4

## B.    Frontier is a "Limited Incumbent Air Carrier" at DCA.

DOT's determination that Frontier is ineligible for the two slot exemptions made available in FAA 2024 to "incumbent air carriers qualifying for status as a limited incumbent air carrier" should be set aside as contrary to law under 5 U.S.C. § 706(2)(A) and (C) for three reasons.

First, DOT and Alaska rewrite the statutory and regulatory definition of "limited incumbent air carrier" to mean a carrier having "between 1 and 39 slots" or "at least one slot." DOT Br. at 18, 20; Alaska Br. at 5, 20–23. That is *not* what the statute or regulation say; rather, a limited incumbent carrier is one that "holds or operates fewer than [40] . . . slots." 49 U.S.C. § 41714(h)(5) (incorporating 14 C.F.R. § 93.213(a)(5)). Frontier clearly satisfies that requirement. DOT and Alaska's interpretation results in nonsensical contradictions, such as creating a "new entrant incumbent" category not recognized in the statute, as well as interpreting the word "incumbent" to mean different things within the same sentence.

Second, DOT and Alaska improperly seek to pigeonhole Frontier—a carrier with continuous operations at DCA for over two decades—into the "new entrant" category despite the plain language of the statute and common sense that forbid this illogical result.

Third, DOT and Alaska blithely dismiss DOT's 2012 post-amendment determinations that Frontier is a limited incumbent at DCA. DOT fails to explain its flip-flop, and that inconsistency greatly undermines its current position that Frontier is not a limited incumbent.

### 1. Frontier qualifies as a "Limited Incumbent Air Carrier."

DOT, Alaska, and Frontier agree that FAA 2024 creates "a two-part test for eligibility: first, a carrier must be an incumbent on the date of enactment of FAA 2024; and second, a carrier must then also qualify for status as a limited incumbent, or non-limited incumbent carrier." DOT Br. at 8; Alaska Br. at 11, 32; J.A. 401. The parties further agree that, because Frontier operates flights through six slot exemptions at DCA—two since 2000, and four since 2004—Frontier satisfies the first part of the test as an "incumbent air carrier" at DCA. DOT Br. at 8; Alaska Br. at 11, 23; J.A. 402.

The only question for part two of the test is determining whether the incumbent air carrier is limited or non-limited, which are the only two statutory categories. *See* 49 U.S.C. § 41714(h); *see also* DOT Br. at 8. Limited incumbents operate "fewer than" 40 slots, while non-limited incumbents operate 40 or more. 49 U.S.C. § 41714(h)(5); 14 C.F.R. § 93.213(a)(5). Frontier is obviously not a non-limited incumbent because it does not operate 40 or more slots at DCA. Frontier must therefore be a limited incumbent.

6

DOT and Alaska assert that, even though Frontier is admittedly an "incumbent" at DCA, it is neither a limited nor a non-limited incumbent. According to them, because Frontier operates only through six slot exemptions and holds zero "slots," it must be a new entrant. But there is no "new entrant incumbent" classification in the statute. Frontier Br. at 27–28. Their flawed interpretation leads to the anomalous, and therefore improper, result of placing Frontier in definitional purgatory, "neither fish nor fowl." *Dep't of State v. Munoz*, 602 U.S. 899, 911 (2024).[2]

Further, DOT and Alaska's position rests entirely on the faulty premise that a limited incumbent must hold "at least one slot" or "between 1 and 39 slots." DOT Br. at 18, 20; Alaska Br. at 5, 20–23. This invents statutory language that simply doesn't exist.

The term "limited incumbent air carrier" is defined, in pertinent part, as:

> [A]n air carrier or commuter operator that holds or operates *fewer than [40]* air carrier or commuter slots, in any combination, at a particular airport . . . .

---

[2] Alaska is wrong that, by not defining "non-limited incumbent," Congress did not intend the statute to encompass all carriers. Alaska Br. at 26–27. From the beginning, Congress understood that, by defining "limited incumbent," it was also defining "non-limited incumbents," and covering all carriers. *See* High Density Traffic Airports, 57 Fed. Reg. 37,308–11 (Aug. 18, 1992); Pub. L. No. 103-305, § 206, 108 Stat. 1569, 1587 (Aug. 23, 1994) (adopting DOT's definitions).

49 U.S.C. § 41714(h)(5); 14 C.F.R. § 93.213(a)(5) (emphasis added). Solely for purposes of this definition, the term "slot" does not include "slot exemptions." 49 U.S.C. § 41714(h)(5)(B)(i). As Frontier explained in its opening brief, it is a limited incumbent because it "holds or operates fewer than [40] . . . slots" at DCA. Frontier Br. at 23–30.

To exclude Frontier, DOT improperly rewrites the definition's plain language as follows:

> In establishing three categories of air carriers, Congress distinguished between those with zero slots (new entrants); *those with between 1 and 39 slots* (limited incumbents); and those with 40 or more slots (non-limited incumbents). *See* 49 U.S.C. § 41714(h)(3), (5).

DOT Br. at 20 (emphasis added). Alaska parrots the same revision. Alaska Br. at 21–22.

Had Congress intended to define limited incumbent air carriers as those having "between 1 and 39 slots," "at least one slot," or "one or more slots," as DOT and Alaska contend, it knew very well how to say so. Indeed, Congress routinely writes statutes, through various phrasings, to expressly set a minimum above zero when that is its intent. *See, e.g.*, 46 U.S.C. § 12105(e)(2)(A) ("between 1 and 5 years"); 26 U.S.C. § 6433(a)(2)(B) ("greater than zero but less than $100"); 26 U.S.C. § 2642(a)(3)(B)(ii) ("greater than zero and less than 1"); 20 U.S.C. § 1070a(b)(1)(A)(ii) ("greater than zero and equal to or less than

8

225 percent"); 15 U.S.C. § 636(a)(7)(C)(ii) ("greater than zero"); 12 U.S.C. § 635t(1)(D) (same); 42 U.S.C. § 415(i)(1)(B) (same); 26 U.S.C. § 965(b)(5)(B) (same); 29 U.S.C. § 1362(d)(A)(i) (same); 8 U.S.C. § 1762(c) ("at least one"); 37 U.S.C. § 355(a)(1) (same); 18 U.S.C. § 1029(a)(1) ("one or more"); 31 U.S.C. § 5318A(a)(1) (same); 10 U.S.C. § 2922d(b), (d) (same); 50 U.S.C. § 1902(b)(2)(A)(i)–(iii), (B)(i)–(iii) ("not less than one"); 20 U.S.C. § 1441(b)(1)(C)–(M) (same); 20 U.S.C. § 9871(b)(2)(A)(ii), (iv)–(vi), (ix)–(xiii) (same); 37 U.S.C. § 302f(a)(1)–(2) (same).

Moreover, DOT, like other departments and agencies, has drafted myriad rules and regulations that expressly foreclose zero. *See, e.g.*, 14 C.F.R. Pt. 420, App. B(c)(1) ("between one and 12"); 14 C.F.R. Pt. 417, App. G, G417.9(c) ("greater than 0, but less than or equal to 3"), G417.11(c) (same); 49 C.F.R. § 40.393(c) ("between one and five"); 14 C.F.R. § 137.47 ("at least 1"); 14 C.F.R. § 25.925(c)(1) (same); 14 C.F.R. § 101.35(d) (same); 49 C.F.R. § 38.157(b) (same); 14 C.F.R. § 222.4(a) ("one or more"); 14 C.F.R. § 17.9(a) (same); 14 C.F.R. § 302.710 (same); 49 C.F.R. § 30.9(a)–(c) (same).

It is glaring that DOT and Alaska do not cite a *single* case, statute, or regulation supporting their repeated assertion that "fewer than [40]" does not include zero, but actually means "between 1 and 39" or "at least one." Frontier's opening brief discussed this Court's decision in *Gorman v. NTSB*, 558 F.3d 580

(D.C. Cir. 2009), which found that "less than 20 seats" includes zero seats when categorizing types of aircraft. Frontier Br. at 24. *Gorman* explains, "[z]ero is, in fact, a number and [i]f you have zero seats, you do have less than 20." *Id*. at 588. Both DOT and Alaska try to distinguish *Gorman* on the ground that the Court deferred to the interpretation of the FAA in a case predating *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). DOT Br. at 20; Alaska Br. at 25. However, numerous other courts have reached the same conclusion as the FAA and this Court in *Gorman*, even without regard to agency deference.

For example, in *United States v. Mullings*, 330 F.3d 123 (2d Cir. 2003), the Second Circuit employed a *de novo* standard of review and held that "zero" is included in a range of "13 months or less." *Id.* at 125. The court explained:

> The word "less," when used in a context in which it pertains to a quantity, means "of a more limited number." Webster's Third New International Dictionary 1296 (1986). Zero is clearly a number "more limited" than thirteen, and a conviction resulting in a non-custodial, zero-month sentence is therefore included in the plain meaning of subsection (B), applying to convictions for which the "sentence imposed was 13 months or less."

*Id.*

Likewise, in *Gratiot Community Hospital v. NLRB*, 51 F.3d 1255 (6th Cir. 1995), the Sixth Circuit, also under a *de novo* standard, found that language in an agreement authorizing a hospital to "decide the number of assignments and the work areas that will be under the Seventy Hour Shift" "is clear and unambiguous

10

in granting authority to the Hospital to determine the number of shifts, *including zero*." *Id.* at 1260–61 (emphasis added); *see also Mem'l Hosp. of Laramie Cnty. v. Healthcare Realty Tr.*, 509 F.3d 1225, 1231 (10th Cir. 2007) ("Zero is a number, not the absence of one." (*citing* Robert Kaplan, The Nothing That Is: A Natural History of Zero 90-115 (1999)); *In re Ky. Processing Co.*, 418 B.R. 217, 219–20 (E.D. Ky. 2009) (finding the statutory phrase "less than $15,000" "is very plain indeed" and included zero, explaining, "[h]ad Congress wished to limit the payment of the fee to only those quarters in which a disbursement totaling something greater than zero was made, it could have included a lower boundary such as one cent or one dollar"). In short, it is well-settled that zero is "fewer than" 40.

Rather than cite cases or statutes, DOT and Alaska proffer hypotheticals, arguing it would be "odd" or "surpris[ing]" to include zero in certain instances. DOT Br. at 18–19; Alaska Br. at 22. But they do not—and cannot—say it would be inaccurate.

Of course there are numerous counter-examples, beyond those in the many statutes, regulations, and cases cited above, demonstrating that Frontier's position aligns with common sense and basic mathematics: If a bank's policy exempts customers from service fees if they make "fewer than" ten withdrawals in a month, someone who makes zero withdrawals will not be charged. If an auto insurer offers

a "safe driver" discount to insureds who accumulate "fewer than" four points on their driving records, someone with zero points is eligible for the discount. If a landlord allows tenants to live at an apartment if they have "fewer than" three pets, someone with zero pets obviously qualifies. And so on.

DOT argues that Frontier's interpretation creates "anomalous results," asserting that "[a] brand-new airline that never operated a flight anywhere would seem to qualify as a limited incumbent." DOT Br. at 19. Alaska makes a similar argument, claiming that "Frontier's reading erases the distinction between limited incumbents and new entrants, making the new entrant category superfluous." Alaska Br. at 24. Not so. Frontier's opening brief addressed this exact argument: a brand-new airline would obviously not be an "incumbent" and instead could only be characterized as a new entrant, whereas an airline that is an incumbent with "fewer than" 40 slots is properly characterized as a limited incumbent. Frontier Br. at 28 ("It is that simple."). Frontier's reading is the only one that gives the ordinary, plain meaning to each word in the statute.

Indeed, it would be far more "anomalous" to conclude that Frontier—which has flown tens of thousands of flights at DCA continuously for the past 25 years— is a "new entrant." *See Jones v. Hendrix*, 599 U.S. 465, 480 (2023) ("The illogical results of applying such an interpretation . . . argue strongly against the conclusion that Congress intended these results.").

12

To support its position, Alaska performs linguistic gymnastics with the term "incumbent." An argument made repeatedly by Alaska (but not DOT) is that to qualify as a limited incumbent, "the carrier must be an *incumbent* as to slots." Alaska Br. at 16; *id*. at 2, 20, 21. But neither the statute nor the regulation say that; instead, they provide that a limited incumbent "holds or operates fewer than [40] air carrier or commuter slots." *See* 49 U.S.C. § 41714(h)(5); 14 C.F.R. § 93.213(a)(5). Alaska simply invents "incumbent as to slots," and its repetition of that phrase does not make it any more correct.

Again, Alaska concedes that Frontier satisfies the first part of FAA 2024's two-part test because "Frontier was 'engaged in air transportation at DCA,' and thus was an 'incumbent air carrier.'" Alaska Br. at 11, 33 (defining "incumbent" as a carrier that "operated flights in and out of DCA as of the 2024 Act"). But Alaska then pivots and argues that the term "incumbent" only refers to holding slots at DCA, not being engaged in air transportation there. *Id.* at 16. It is hard to envision a less appropriate statutory interpretation than one that reads the same word to mean two different things within the same sentence.

As both DOT and Alaska recognize, Frontier is an "incumbent air carrier" because it operates flights at DCA. DOT Br. at 8; Alaska Br. at 11, 23; J.A. 402. And because Frontier holds or operates "fewer than" 40 slots, it is a "limited incumbent air carrier" eligible for the slot exemptions provided in FAA 2024.

13

### 2.    Frontier cannot be a "New Entrant Air Carrier."

DOT and Alaska's position further depends on rewriting other parts of the statute to categorize Frontier as a new entrant instead of a limited incumbent. In particular, they ignore basic principles of statutory interpretation to misconstrue the statutorily-defined terms "slot" and "new entrant air carrier." DOT Br. at 15; Alaska Br. at 23–26. Their position cannot be squared with the statutory language, which neither DOT nor Alaska claim is ambiguous.

The term "slot" is defined as: "[A] reservation for an instrument flight rule takeoff or landing by an air carrier of an aircraft in air transportation." 49 U.S.C. § 41714(h)(4); 14 C.F.R. § 93.213(a)(2). This definition is plainly broad enough to encompass slot exemptions. Indeed, DOT and Alaska acknowledge that, "[l]ike a slot, a slot exemption is a right to conduct one takeoff or landing." Alaska Br. at 7; DOT Br. at 4 (admitting that slots and slot exemptions "perform a similar function in that they authorize flight takeoffs and landings"). It bears emphasis that the term "slot exemption" is not separately defined.

In addition, the term "new entrant air carrier" is defined as:

> [A]n air carrier that does not hold a slot at the airport concerned and has never sold or given up a slot at that airport after December 16, 1985, and a limited incumbent air carrier.

49 U.S.C. § 41714(h)(3); 14 C.F.R. § 93.213(a)(1). "Slot" as used in this definition has the meaning set forth in § 41714(h)(4).

14

Accordingly, the six slot exemptions Frontier operates at DCA count as slots for purposes of the foregoing definitions of "slot" and "new entrant air carrier." Because a new entrant is one that "does not hold a slot at the airport," Frontier cannot be a new entrant at DCA under § 41714(h)(3).[3]

To be sure, Congress amended § 41714(h)(5) in 2012 to provide that the term "slot" does not include "slot exemption," but *only* for purposes of the "limited incumbent air carrier" definition:

> (5) LIMITED INCUMBENT AIR CARRIER.—The term "limited incumbent air carrier" has the meaning given that term in subpart S of part 93 of title 14, Code of Federal Regulations; except that—
>
> > (A) "40" shall be substituted for "12" in sections 93.213(a)(5), 93.223(c)(3), and 93.225(h);
> >
> > (B) *for purposes of such sections*, the term "slot" shall not include—
> >
> > > (i) "slot exemptions"; . . . .

(emphasis added).

DOT and Alaska elide the important fact that Congress did *not* likewise amend the immediately preceding definitions of "slot" or "new entrant air carrier"

---

[3] To be clear, by virtue of being a "limited incumbent air carrier," Frontier is a "new entrant air carrier" under § 41714(h)(3). Frontier Br. at 10 n.4, 27 n.12. The same is true for Alaska, even though Alaska is not eligible for slot exemptions at DCA as a limited incumbent or new entrant. 49 U.S.C. § 41714(k); *supra* § II.C.

in § 41714(h)(3) and (4) to exclude "slot exemptions." Of course, Congress could have easily done so if that was its intent. After all, these three definitions are right next to one another, back-to-back-to-back, in the same statutory provision. 49 U.S.C. § 41714(h)(3)–(5).

The Supreme Court's decision in *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 174–75 (2009), is directly on point:

> *When Congress amends one statutory provision but not another, it is presumed to have acted intentionally.* Furthermore, as the Court has explained, "negative implications raised by disparate provisions are strongest" when the provisions were "considered simultaneously when the language raising the implication was inserted."

(emphasis added) (citation omitted).

The negative implication here is that, by only excluding "slot exemptions" from the "limited incumbent air carrier" definition, Congress did *not* intend to exclude "slot exemptions" from the definition of "slot," or from the term "slot" as it is used in the "new entrant air carrier" definition. Ours is the "strongest" scenario envisioned by *Gross* because the definitions of "new entrant air carrier," "slot," and "limited incumbent air carrier" are included together in § 41714(h)(3)–(5). *Id.* Moreover, the Court need not rely only on negative implications here: Congress has affirmatively stated that the exclusion of "slot exemptions" from the limited

16

incumbent definition is solely "for purposes of such sections."[4] 49 U.S.C.

§ 41714(h)(5)(B).

The Supreme Court's newly-rendered decision in *City & County of San Francisco, California v. EPA*, 145 S. Ct. 704, 713–14 (2025) also controls:

> "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." We have invoked this canon time and time again. And it is fatal to San Francisco's argument here. Sections 1311(b)(1)(A) and (B) refer to "effluent limitations," but the very next provision, § 1311(b)(1)(C), refers instead to "any more stringent limitation." We cannot believe that Congress omitted the term "effluent" from § 1311(b)(1)(C) simply because it wanted to save ink or assumed that regulators and interested parties would understand that the omission of the term was inconsequential.

(emphasis added) (citations omitted); *see also Me. Cmty. Health Options v. United States*, 590 U.S. 296, 314 (2020) ("This Court generally presumes that 'when Congress includes particular language in one section of a statute but omits it in another,' Congress 'intended a difference in meaning.'" (citation omitted)).

DOT and Alaska do not address *Gross*, which Frontier discussed in its opening brief. Frontier Br. at 26. Instead, DOT cites *Marx v. General Revenue*

---

[4] "[S]uch sections" refers to the definition of limited incumbent carrier in 14 C.F.R. § 93.213(a)(5), and two other inapposite regulations.

*Corp.*, 568 U.S. 371, 381 (2013) to assert "[t]he force of any negative implication, however, depends on context." DOT Br. at 17. But the context in *Marx*—where the Court determined that Congress's reference to awarding costs under 15 U.S.C. § 1692k(a)(3) did not displace the general discretion to award costs under Federal Rule of Civil Procedure 54(d)(1)—is completely dissimilar to the context here, where Congress chose to amend § 41714(h)(5), but not the two adjacent definitions, § 41714(h)(3) and (4). *See Marx*, 568 U.S. at 381 (explaining the negative implication canon applies when "it is fair to suppose that Congress considered the unnamed possibility"). Congress's decision not to exclude slot exemptions from "slot" in § 41714(h)(3) and (4) was not done "to save ink." *City & Cnty. of S.F.*, 145 S. Ct. at 713–14. Rather, it is "presumed that Congress acts intentionally and purposely." *Id.*

DOT and Alaska in fact contradict themselves by arguing that the pre-2012 version of § 41714(h)(5)—that expressly *included* "slot exemptions" as slots in the limited incumbent definition—created the negative implication that Congress did not intend to treat slot exemptions as slots in other parts of the statute. DOT Br. at 17; Alaska Br. at 26. If anything, this argument helps Frontier. Congress's choice to amend the statute in 2012 to exclude slot exemptions from slots *only* in the limited incumbent definition creates the opposite (and operative) negative

implication—*i.e.*, "slot exemption" *is* included in the term "slot" unless expressly stated otherwise.

Thus, DOT is simply wrong in asserting that "the overall statutory scheme . . . consistently distinguishes between 'slots' and 'slot exemptions.'" DOT Br. at 16; *see also* Alaska Br. at 25. Rather, Congress distinguishes the two where it is intentional and purposeful, *see* § 41714(h)(5), and draws no distinction where they should be treated the same, *see* § 41714(h)(3) and (4).

In short, because § 41714(h)(3)–(5) only excludes slot exemptions from the definition of limited incumbent, but not from the definitions of slot and new entrant, Frontier cannot be a new entrant. Instead, Frontier is, and must be, a limited incumbent, eligible for the two slot exemptions provided in FAA 2024.

### 3.    DOT's ruling is contrary to its prior orders.

As noted in Frontier's opening brief, Frontier Br. at 28–29, DOT's conclusion that Frontier is not a limited incumbent carrier at DCA is squarely contradicted by DOT's prior orders (rendered *after* the 2012 amendment to the definition of limited incumbent) that state: "Frontier, a limited incumbent carrier at DCA" J.A. 112, and "Frontier confirms its status as a limited incumbent carrier," *id.* at 76. DOT dismisses its about-face as a mere "passing remark," DOT Br. at 22, and Alaska pooh-poohs it as "meaningless," Alaska Br. at 27. But DOT's inconsistency as to Frontier's status at DCA cannot simply be ignored. *See*, *e.g.*,

19

*Healthy Gulf v. FERC*, 107 F. 4th 1033, 1042 (D.C. Cir. 2024) ("When 'a party makes a significant showing that analogous cases have been decided differently, the agency must do more than simply ignore that argument.'" (citation omitted)); *Balt. Gas & Elec. Co. v. FERC*, 954 F.3d 279, 286 (D.C. Cir. 2020) (courts "must consider whether the agency has offered a reasonable and coherent explanation for the seemingly inconsistent results"). DOT has not offered any such explanation.

Alaska relies on *Loper Bright* to argue that "DOT's prior interpretation doesn't matter." Alaska Br. at 27. But the issue is not whether deference is owed to DOT's prior orders. The point is that DOT's inconsistent characterization of Frontier greatly undermines its current position.

*          *          *

In sum, the plain language of the statute, as well as fundamental canons of statutory construction, compel the conclusion that Frontier is eligible for the FAA 2024 slot exemptions because it is both an incumbent at DCA and a limited incumbent that holds or operates "fewer than" 40 slots.

### C.    Alaska is statutorily prohibited from obtaining the limited incumbent slot exemptions at DCA.

As demonstrated in Frontier's opening brief, the unambiguous language of 49 U.S.C. § 41714(k) and Alaska's extensive codeshare agreement with American render Alaska ineligible for the FAA 2024 slot exemptions as a limited incumbent. Section 41714(k) states:

20

> For purposes of this section and sections 41716, 41717, and 41718 [FAA 2024], an air carrier that operates under the same designator code, or has or enters into a code-share agreement, with any other air carrier shall not qualify for a new slot or slot exemption as a new entrant or limited incumbent air carrier at an airport if the total number of slots and slot exemptions held by the two carriers at the airport exceed 20 slots and slot exemptions.

The statute brooks no exceptions. Where, as here, two carriers have a codeshare agreement through which they collectively hold more than 20 slots and slot exemptions at an airport, both carriers "*shall not qualify* for a new slot or slot exemption as a new entrant or limited incumbent air carrier." *Id.* (emphasis added). Full stop.[5]

American is the dominant carrier at DCA. It currently holds a 54% market share and serves nearly four times as many passengers as its next closest competitor.[6] When FAA 2024 was enacted, American had 504 slots and slot

---

[5] Notably, Alaska filed a conditional cross-petition "to allow it, in the event the Court finds that Alaska is not a limited incumbent air carrier, to seek vacatur of the full Order so Alaska can apply to DOT as a non-limited air carrier for slot exemptions allocated to that other category of carriers." Petition for Review, No. 25-1062, at 1–2. That cross-petition reflects Alaska's acute awareness that its claimed status as an eligible limited incumbent rests on shaky ground.

[6] Metropolitan Washington Airports Authority, Air Traffic Statistics, (January 2025), at 2, https://www.mwaa.com/sites/mwaa.com/files/2025-03/1-25%20ATS%20%283.6.25%29.pdf.

exemptions at DCA.; Alaska had 18.[7] There is no reasonable dispute that "Alaska and American have had a code share relationship at DCA." J.A. 403, 492; DOT Br. at 9–11, 13–14, 32–35.[8] Their combined total of 522 slots and slot exemptions is over *26 times* the limit specified in § 41714(k). Alaska is thus prohibited from obtaining slot exemptions at DCA as a limited incumbent.

The statute does not confer upon DOT any discretion to avoid this result. DOT conceded as much in its Order to Show Cause and Final Order, emphasizing repeatedly that the statutory criteria "limit our discretion." J.A. 405, 490.

Nevertheless, DOT created for itself discretionary rules to not apply the statute as written. It made a "judgment" call that a strict application of § 41714(k) "would result in a suboptimal outcome" from its perspective. DOT Br. at 33; J.A. 493. Remarkably, it freely admitted in its Final Order that it was not "[r]eading § 41714(k) rigidly," and was making its decision to award the slot exemptions to Alaska "*without reference to codeshare agreements.*" J.A. 492–93 (emphasis added). This blatant disregard for Congress's express statutory directive is contrary to law and cannot be countenanced.

---

[7] *See* Frontier Br. at 12 & n.7.

[8] Alaska attempts to avoid this dispositive concession through the bald assertion that it "does not have a 'code-share agreement' at DCA with American." Alaska Br. at 41. That is false, and contradicts its prior statements. *See, e.g.*, J.A. 461 ("[A]lthough Alaska has a codeshare agreement with American . . . .").

DOT asks this Court to defer to its determination that the Alaska-American codeshare agreement is exempt from § 41714(k)'s unambiguous prohibition, claiming "[t]hat kind of routine, 'factbound' determination is within the agency's ken." DOT Br. at 35 (citing *Loper Bright*, 603 U.S. at 388). But Alaska's eligibility does not turn on any disputed *facts*. Rather, it turns on the purely legal question of whether § 41714(k)'s broad reference to "code-share agreement" and clear application to both codeshare carriers should instead be interpreted to mean only certain codeshare agreements and only one of the two carriers to the agreement. *Loper Bright* makes crystal clear that such "questions of *law*" are "exclusively a judicial function." 603 U.S. at 387, 389.

It is significant that Alaska does not argue that DOT's determination on its eligibility should be accorded deference. Indeed, Alaska twice asserts that "Frontier's status is a legal question for the court under *Loper Bright*." Alaska Br. at 17, 27. By the same token, Alaska's status is a legal question for the Court.

As further excuse for bypassing the statute's unambiguous language, DOT cites the purported "animating concern behind § 41714(k)" based on irrelevant legislative history. DOT Br. at 33; J.A. 493. This ignores the "strong presumption that the plain language of the statute expresses congressional intent." *United States v. Clintwood Elkhorn Mining Co*., 553 U.S. 1, 11 (2008). Courts should not even consult legislative history when the statute is unambiguous, as it is here. *See*

*Mohamad v. Palestinian Auth.*, 566 U.S. 449, 458 (2012) ("[R]eliance on legislative history is unnecessary in light of the statute's unambiguous language." (citation omitted)); *see also Culbertson v. Berryhill*, 586 U.S. 53, 58 (2019) ("We 'begin with the language of the statute itself, and that is also where the inquiry should end, for the statute's language is plain.'" (citation omitted) (alteration omitted)). Significantly, neither DOT nor Alaska argue that § 41714(k) is ambiguous. Therefore, the Court's analysis should begin and end with § 41714(k)'s plain language.

What's more, DOT's reliance on H.R. Rep. No. 106-167, pt. 1 (May 28, 1999) and S.Rep. No. 106-9 (March 8, 1999), DOT Br. at 33–34; J.A. 404 n.97, is misplaced. Those reports addressed different proposed legislation for treating "commuter air carriers" "equally" to their codeshare partner. Equally misplaced is Alaska's reliance on Senator McCain's October 1999 comments that discussed how commuter carriers should be treated equally and that major airlines "should not be allowed to game the system . . . through its commuter affiliates and codeshare partners." Alaska Br. at 41 (citing 145 Cong. Rec. S12096 (daily ed. Oct. 6, 1999)). Moreover, these comments are irrelevant because the operative language in § 41714(k) was not proposed, much less adopted, until the following year. *See* Pub. L. No. 106-181, § 231, 114 Stat. 107, 108 (April 5, 2000); H.R. Rep. No. 106-513 (March 8, 2000). DOT and Alaska's resort to plainly inapposite

24

legislative history in the face of unambiguous statutory language speaks volumes to the weakness of their position.

All told, DOT and Alaska's efforts to circumvent § 41714(k) depend on the limitations placed on the American-Alaska codeshare agreement by the Final Judgment in *United States v. Alaska Air Group, Inc*., No. 1:16-cv-2377, 2017 WL 3674773 (D.D.C. June 23, 2017), Dkt. No. 16. *See* J.A. 117–26;[9] Alaska Br. at 41–42; DOT Br. at 34. But the statute says *nothing* about the scope of codeshares. There either is a codeshare or there is not. *Cf.* J.A. 132 (the Department of Justice recognizing in connection with the Final Judgment that "codeshare agreements can take various forms"). And Alaska has a codeshare agreement with American that far exceeds 20 slots and slot exemptions at DCA.

Regardless, any limitations to the Alaska-American codeshare agreement cannot overcome the statute's unambiguous prohibition. First, American's inability to place its code on Alaska flights means little because Alaska operated only nine flights at DCA at the time of the Final Order. *See* Frontier Br. at 33. Much more meaningful is that Alaska *can* place its code on every American flight at DCA

---

[9] As DOT notes, the Final Judgment entered in June 2017 is identical to the proposed final judgment in the Joint Appendix. DOT Br. at 33 n.3.

except those to Los Angeles—and is currently doing so on more than 100 different routes, totaling over 800 flights per week at DCA. *Id.*[10]

Second, Alaska and DOT neglect to mention that the June 2017 Final Judgment is set to expire in two years:

> **IX. Expiration of Final Judgment**.
>
> Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry.

2017 WL 3674773, at *5. Of course, the two slot exemptions DOT awarded to Alaska have no expiration date, and American and Alaska will be freed of any code-sharing constraints after June 23, 2027.

In sum, it was legally erroneous for DOT to ignore the plain language of § 41714(k) and to conclude that Alaska was eligible for the two limited incumbent slot exemptions made available by FAA 2024. The extensive Alaska-American codeshare agreement renders Alaska ineligible for those slot exemptions, and the Final Judgment upon which DOT and Alaska rest their case is both legally irrelevant and soon-to-be obsolete.

---

[10]  DOT appears to have abandoned the "meaningful access" test that it invented in the agency proceedings, under which it found that the codeshare agreement did not provide Alaska with "meaningful access." J.A. 404; *see also* DOT Br. at 32–36; Frontier Br. at 32–33.

**D.     The Spirit Airlines and San Diego County Regional Airport Authority briefs.**

Frontier agrees with the arguments made by DOT and Alaska that Spirit Airlines' intervention is untimely and improper, and in any event misguided because Spirit is not eligible for the limit incumbent slot exemptions provided in FAA 2024. Frontier will not burden the Court by rehashing these arguments.

In addition, the amicus brief filed by the San Diego County Regional Airport Authority is irrelevant as it expressly disclaims making arguments "on air carrier eligibility," San Diego Br. at 3, 18, which is the only issue before the Court. Any purported benefits of a flight to San Diego have no bearing on Frontier's or Alaska's eligibility. To be sure, no party disputes that Frontier's proposed flight between DCA and San Juan, Puerto Rico meets the criteria in 49 U.S.C. § 41718(i)(4)(B)(ii). *See* Frontier Emergency Motion for Partial Stay and Expedited Consideration at 21–22.

### III.    <u>CONCLUSION</u>

For the reasons set forth above and in its opening brief, Frontier respectfully requests that its Petition for Review be granted and that the Court either allocate Frontier the two slot exemptions made available to limited incumbent air carriers in FAA 2024, or remand to DOT with instructions to do so.

Dated:   April 7, 2025                 Respectfully submitted:

                                         */s/ Aaron Schaer*
                                         Aaron Schaer
                                         D.C. Circuit #65864
                                         BALLARD SPAHR LLP
                                         13313 Balfour Ave
                                         Huntington Woods, MI 48070
                                         Direct: 206.223.7103
                                         Fax: 206.223.7107
                                         schaera@ballardspahr.com

                                         Burt M. Rublin
                                         BALLARD SPAHR LLP
                                         1735 Market Street, 51st Floor
                                         Philadelphia, PA  19103-7599
                                         Direct: 215.864.8116
                                         Fax: 215.864.9783
                                         rublin@ballardspahr.com

                                         *Counsel for Petitioner Frontier*
                                         *Airlines, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND WORD COUNT LIMITATIONS</u>

I, Aaron Schaer, counsel for Petitioners and a member of the Bar of this

Court, certify pursuant to Fed. R. App. P. 32(a)(7) that the foregoing reply brief

complies with the type-volume limitation because it contains 6,433 words,

excluding the parts exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1). I

further certify that this brief complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the typeface style requirements of Fed. R. App. P. 32(a)(6).


Dated:  April 7, 2025                    Respectfully submitted:

                                        */s/ Aaron Schaer*
                                        Aaron Schaer
                                        D.C. Circuit #65864
                                        BALLARD SPAHR LLP
                                        13313 Balfour Ave
                                        Huntington Woods, MI 48070
                                        Direct: 206.223.7103
                                        Fax: 206.223.7107
                                        schaera@ballardspahr.com

                                        *Counsel for Petitioner Frontier*
                                        *Airlines, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 7, 2025, I electronically filed the foregoing

Petitioner Frontier Airlines, Inc.'s Reply Brief with the Clerk of the Court for the

United States Court of Appeals for the District of Columbia Circuit by using the

appellate CM/ECF system. Participants in the case are registered CM/ECF users

and service is accomplished through the appellate CM/ECF system.


Dated:  April 7, 2025                    Respectfully submitted:

                                         */s/ Aaron Schaer*
                                         Aaron Schaer
                                         D.C. Circuit #65864
                                         BALLARD SPAHR LLP
                                         13313 Balfour Ave
                                         Huntington Woods, MI 48070
                                         Direct: 206.223.7103
                                         Fax: 206.223.7107
                                         schaera@ballardspahr.com

                                         *Counsel for Petitioner Frontier*
                                         *Airlines, Inc.*